THOMPSON ET AL., APPELLEES, v. LAKE COUNTY NATIONAL BANK, APPELLANT.

[Cite as Thompson v. Lake County National Bank (1975), 47 Ohio App. 2d 249.]

(No. 5-097—Decided May 27, 1975.)

*Mr. Theodore Klammer*, for appellees.

*Mr. Wayne Davis* and *Mr. Timothy Levstik*, for appellant.

DAHLING, J This is an appeal from the Municipal Court of the city of Willoughby in a civil suit wherein the plaintiffs, the appellees herein, were awarded a judgment in the the amount of $1,000, plus interest.

Plaintiff Thompson purchased two $500 money orders from defendant, the appellant. Thereafter, plaintiff, while drinking at several bars and becoming inebriated, lost the two money orders. The following morning the defendant was notified before banking hours that the money orders had been lost and a stop-payment order was made.

The defendant notified its branches but one of the money orders was cashed shortly after one of the branches had opened for business, before it had been called. The second

money order was cashed at Society National Bank and payment was stopped by the defendant. However, about ten days later, defendant reversed its position and honored the money order cashed at Society National Bank.

One of the money orders (B-681542) bore the forged signature of John Thomas as drawer and was made payable to John W. Machin. The endorsement of John W. Machin was fraudulent and false.

The second money order (B-681543) bore the forged signature of Ronald Johnson as drawer and was made payable to Patricia Osborne. The endorsement of Patricia Osborne was fraudulent and false.

When plaintiff Thompson purchased the personal money orders, he was required, as is the practice at the defendant bank, to sign a document titled "Request for Bank Money Order, Draft, or Official Check." On this form was listed the amounts of the money orders.

The trial court found that Thompson's negligence contributed to the unauthorized signatures appearing on the money orders, but that the bank did not act within the reasonable commercial standards of the drawee's or payor's business, in that it failed to know the signature of the drawer.

The bank filed its notice of appeal and assigned the following errors:

"1. The Willoughby Municipal Court erred in not finding plaintiff-appellee's inebriated exhibition of his money orders in a tavern as negligence which precludes him from asserting the lack of authority of those who negotiated the money orders taken from plaintiff-appellee while he was in the tavern.

"2. The Willoughby Municipal Court erred in not holding that a bank is not required to honor a purchaser's stop order on a money order and is not liable for failure to stop payment thereon.

"3. The Willoughby Municipal Court erred as a matter of law in not holding where a bank notified its tellers the same morning that it receives an 8:30 o'clock a. m. request to stop payment on a money order, but the money order

was cashed almost immediately upon opening of the bank's teller windows, the bank has not been given a reasonable time to honor, if required, a request not to pay the money orders.''

Defendant's first assignment of error is that since the trial court found that plaintiff Thompson was negligent in handling the money orders while inebriated, this precludes him from asserting the lack of authority of those that negotiated and cashed the money orders.

It is our opinion that the bank's negligence in cashing the first money order with the forged signature of John Thomas as drawer and the fraudulent and false endorsement of John W. Machin was the direct cause of the loss. Thompson's negligence did not contribute to the bank's acceptance of the forged instrument.

In regards to the second money order cashed at Society National Bank, the loss was the direct result of their negligence in cashing the money order with the forged signature of Ronald Johnson as drawer and the false and fraudulent endorsement of Patricia Osborne. The defendant then negligently honored this money order from Society National Bank, although payment on it had been stopped and the money order was stamped "payment stopped."

In *S. Weisberger Co.* v. *Barberton Savings Bank Co.* (1911), 84 Ohio St. 21, the court found the drawer's negligence in mailing a check to the wrong address where a party by the same name cashed it was the direct cause of the loss and the bank was not liable. The *Weisberger* case can be distinguished since the check there was made payable to Max Roth and in fact a Max Roth cashed the check. There was no negligence on the part of the bank. Likewise, in the case of *Park State Bank* v. *Arena Auto Auction, Inc.* (1965), 59 Ill. App. 2d 235, 207 N. E. 2d 158, cited by defendant, there was an error in the check being sent to Plunkett in Rockford, Illinois instead of to Plunkett in Alabama.

In our opinion, in order for the negligence of the drawer of a personal money order to preclude recovery against the collecting bank, it must be such that it directly and proximately affects the conduct of the collecting bank and

contributes to or induces the bank's acceptance of the forged or unauthorized endorsement.

In this regard, the syllabus of *Butler Produce & Canning Co.* v. *Edgerton State Bank* (1952), 91 Ohio App. 385, states, in part, as follows:

"2. As between the payee of a check whose signature has been forged and an intermediate endorsee bank which has taken such forged check, the doctrine of 'two innocent persons' is applicable and the payee whose name has been forged may by his conduct be estopped from asserting the forgery, but when the payee does nothing to clothe the forger with indicia of authority to endorse such check or receive the proceeds thereof, other than to permit such check to come into the forger's possession, the 'two innocent persons' rule does not apply. The acts of the payee must in some manner contribute to cause the endorsee to pay the forged check.

"3. Mere possession of an unendorsed check does not clothe the possessor with apparent authority to negotiate it."

In the instant case, the negligence of the drawer in losing the checks did not cause, contribute or induce the bank to accept the forged and unauthorized endorsed money orders.

With regard to the second assignment of error, a personal money order is similar to a personal check. In this instance, the bank required Thompson's signature upon the issuing of the personal money orders. His signature as drawer was necessary. Further, the personal money orders were issued in blank as to the name of the payee and an endorsement was necessary.

In the instant case, the bank accepted the stop payment order and did in fact stop payment on the second money order. Defendant relies on *Cross* v. *Exchange Bank Co.* (1958), 110 Ohio App. 219, but in that case there was not the element of a lost or stolen money order or fraud. In fact, Judge Stevens, in the opinion (page 220), quoted with favor from 9 Corpus Juris Secundum 382, Banks and Banking, Section 173, as follows: " "* * * [T]he general rule in that there is

no right to countermand payment of a \* \* \* cashier's check by the drawer, payee, or depositor at whose request the instrument was issued except for fraud or failure of consideration, or where payment is stopped by injunction proceedings \* \* \*.' "

The case of *United States* v. *Milton* (1966), 36 Ohio Op. 2d 394, involved Alex S. (Shondor) Birns, who had money orders in his possession which were seized by the United States to apply against an income tax lien. Judge Kalbfleisch, of the United States District Court for the Northern District of Ohio held that the United States could fill in the payee blank since as a consequence of the levy the United States was rightfully in possession thereof and had prima facie authority to fill in the blank. Needless to say, that case can be distinguished from the instant case.

The case of *Leo Syntax Auto Sales, Inc.,* v. *Peoples Bank & Savings Co.* (1965), 35 Ohio Op. 2d 330, stands for the proposition that the bank has the right to honor a stop payment order on a cashier's check where the purchaser's endorsement was obtained by fraud perpetrated upon him by the endorsee.

It is our opinion that upon the request of the drawer to stop payment, the defendant was required to stop payment and it became liable for its failure to do so.

We cite *Garden Check Cashing Service, Inc.,* v. *First National City Bank* (1966), 18 N. Y. 2d 941, in which the court held: " \* \* \* [T]here was little difference between the present transaction and one where a person deposited a sum of money with a bank and received a quantity of blank checks \* \* \*. [T]he use of the words 'Personal Money Order' and 'Register Check' did not alter applicable legal principles \* \* \*. [T]he purchaser was the sole person who may draw on the fund, and had a clear right to stop payment prior to acceptance of the instrument \* \* \*."

As the third assignment of error, the testimony is not clear as to the exact time the money order was cashed at the branch bank. However, Mr. Thompson's wife attempted to call the defendant's main office at 7:50 a. m., only to receive a recording. Thereafter, no later than 8:30 a. m.,

254

she requested the stop payment order in a conversation with Mr. Wood, the Willoughby Hills branch manager.

Accordingly, the third assignment of error is overruled, and the judgment of the Municipal Court of Willoughby is affirmed.

*Judgment affirmed.*

HOFSTETTER, P. J., and COOK, J., concur.