147 N.J. Super. 115 (1977)
370 A.2d 874
MADELINE BRUNO, PLAINTIFF-APPELLANT,
v.
COLLECTIVE FEDERAL SAVINGS AND LOAN ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1977.
Decided January 31, 1977.
*118 Before Judges BISCHOFF, MORGAN and RIZZI.
Mr. Charles L. Winne argued the cause for appellant (Messrs. Tomar, Parks, Seliger, Simonoff & Adourian, attorneys).
*119 Mr. Joseph E. Robertson argued the cause for respondent.
PER CURIAM.
Plaintiff appeals from a judgment of no cause of action entered in this nonjury case contending that the challenged judgment resulted from the trial judge's incorrect application of principles of negotiable instruments law to the facts of this case.
The evidence disclosed that plaintiff, a depositor with defendant bank, maintained a savings account with that institution which, on April 27, 1971, showed a balance of slightly over $12,000. On that date she sought withdrawal of $5,000 therefrom, not in cash but by way of check made payable to her uncle, Samuel Clerico. In compliance with her request defendant bank issued a check in the requested amount, drawn on its own account in the Federal Home Loan Bank and made payable to plaintiff's uncle. Although the check was drawn near the close of business hours on April 27, 1971, it bore the date of April 28, 1971, a procedure apparently used by the bank to accommodate the closing of its books near the end of every business day without inconveniencing its customers. Plaintiff's passbook was debited to reflect the $5,000 withdrawal.
From the bank plaintiff went to a relative's home where she turned the check over to her uncle's son, Anthony, who endorsed the check in his father's name and left with it. A later conversation with her uncle confirmed her suspicions that Anthony had endorsed the check without the authorization of his father, the payee on the check. Concluding that the payee's endorsement had been forged, a conclusion later shown to be erroneous,, she called defendant bank the next morning, spoke with the branch manager, Mrs. Wimberg, and asked that the bank stop payment on the check. Mrs. Wimberg testified that the call was made on April 29, not April 28 as testified to by plaintiff.
At any rate, Mrs. Wimberg completed a stop payment form on April 29 and forwarded it to the bank upon which the check was drawn, the Federal Home Loan Bank of New York. *120 The check, bearing the endorsement of Samuel Clerico (by his son, Anthony) and one Martin Simon had been cashed by another branch of defendant bank on April 28, 1971, the day before the stop payment form had been completed and the same day plaintiff testified she had asked the bank to stop payment.
The stop payment had been sent to the drawee bank without the realization that the check had already been cashed by defendant. Without waiting to see whether the stop payment order would be effective (it ultimately was, the drawee bank never paid out on the check) and presuming that the check would not be cashed on presentation, Mrs. Wimberg authorized the recrediting of plaintiff's account in the amount of $5,000. A few days later, when she learned that the check had been cashed, she asked plaintiff to bring in her passbook so that the $5,000 could again be deducted. Plaintiff refused and brought suit to recover the entire $12,000 balance in her account.
Although we agree with plaintiff that the provisions of the Uniform Commercial Code relied upon by the trial judge have no application to this case, we nonetheless conclude that the result reached was a partially correct one although for different reasons. It is essential to an understanding of this case to emphasize that plaintiff was not a party to the check in question; defendant bank was the drawer, the Federal Home Loan Bank of New York was the drawee, and Samuel Clerico was the payee. Clerico, who admitted during the trial that the endorsement of his name was not unauthorized, appeared as an endorser as well as did Martin Simon. Clearly since plaintiff is not a party to the check in question, her rights with respect to it are not governed by that section of the Uniform Commercial Code defining rights and liabilities with respect to parties to negotiable instruments. Hence, contrary to the ruling of the trial court, N.J.S.A. 12A:4-303 does not control disposition *121 of this case. The same is true with respect to N.J.S.A. 12A:4-403 and N.J.S.A. 12A:4-407.[1]
Rather, the rights of plaintiff against defendant bank, if any, in the given circumstances are governed by the contract of deposit between plaintiff and bank, the specific contents of which were never disclosed by the record. Nonetheless, certain aspects of that relationship are inferable from what occurred in this case. Traditionally, the relationship between a depositor and bank is viewed as that of creditor and debtor. F.I.N.N.E., Inc. v. National State Bank of Newark, 74 N.J. Super. 86, 89 (App. Div. 1962); Forbes v. First Camden Nat'l Bank & Trust Co., 25 N.J. Super. 17, 20 (App. Div. 1953). When plaintiff withdrew $5,000 defendant bank ceased to be her debtor in that amount. Had the withdrawal been made in cash, and had she lost the cash or had it been stolen from her, she would have had *122 no recourse against the bank. We can, nonetheless, infer from this record that the fact that the withdrawal was made by check still left plaintiff with certain rights against the bank for the amount of the check, at least until it was cashed, that is, until it assumed the form of cash. We draw this inference from the bank's actions in attempting, successfully in this case, to stop payment thereon at the request of its depositor.[2] Once it undertook this course of action, it was under an obligation to exercise due care in connection with this attempt.
The evidence is uncontradicted that the check was cashed on April 28 the same day as plaintiff testified she attempted to have payment thereon stopped. The record does not, however, disclose when on that day Simon presented the check for cashing and we cannot therefore know whether it was cashed before or after plaintiff's request, or whether it was cashed so soon after the request for stopping payment that the defendant bank could not reasonably have been expected to act with effectiveness on the request. If defendant's testimony is credited, plaintiff's request for a stop payment was made the day following Simon's cashing of the check. But regardless of which date the request was made, April 28 or April 29, the result is the same; plaintiff failed in her burden of proving that defendant bank acted with anything less than due care in cashing the check for Martin Simon.
The fact that defendant bank recredited plaintiff's account in the amount of the check on the mistaken assumption that *123 the check had not been cashed does not alter the result. The funds had not been withdrawn by the date the bank corrected its error. All the bank was doing was correcting the statement of the amount of its debt owing to plaintiff on the basis of its later discovery of the truth  that the check, covered by the debit of plaintiff's account, had been cashed and the withdrawal therefore completed.
Finally, the equities in the case, if we were to consider them germane, preponderate in defendant's favor. The withdrawal and the form thereof were in accordance with plaintiff's request. The reason given by plaintiff for her attempt to stop payment thereon, forgery of her uncle's name to the check as endorser, proved to be without substance. The proceeds of the check were used on the uncle's behalf, to pay a debt owed by him to Martin Simon, the second endorser and the one who cashed the check. The bank did comply with plaintiff's request to stop payment on the check, and indeed the bank's attempt in that regard was successful: the drawee never did honor that check. In these circumstances plaintiff is in a poor position to urge that the unsuccessful attempt to preclude payment on the check, an attempt undertaken on a mistaken conclusion of fact (that the payee's endorsement was forged), should result in the bank's liability for the amount, particularly when the proceeds of the check did, in fact, reach the intended party.
Hence, the trial judge correctly held that the bank was not liable to plaintiff in the amount of $5,000; it was, however, incorrect in concluding that she was not entitled to the remaining amounts of deposit, that is, the total amount on deposit less than $5,000 withdrawal.
Judgment is therefore modified to permit defendant to debit plaintiff's passbook account with $5,000 and permit plaintiff to withdraw any or all of the remaining monies in the account.
NOTES
[1] N.J.S.A. 12A:4-303 provides that a stop payment order received by a payor bank comes too late to require that payment be stopped if the payor bank has already paid the item in cash. A payor bank is defined by N.J.S.A. 12A:4-105(b) as "a bank by which an item is payable as drawn or accepted." Contrary to the ruling of the trial judge, this section has no application to this case because the payor bank, the Federal Home Loan Bank of New York, had not paid the item in cash before the stop payment order was received. Indeed, the payor bank never did pay the item in cash; it honored the stop payment. Rather it was the drawer bank, the defendant, which cashed the item.

Similarly, N.J.S.A. 12A:4-403 limiting to customers the right to order that payment be stopped, and providing that such an order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item, is for the same reason inapplicable. Contrary to the trial judge's ruling, the bank could have stopped payment against Martin Simon, as holder in due course; it would, however, have remained liable to him. N.J.S.A. 12A:3-413(2) and Uniform Commercial Code Comment to N.J.S.A. 12A:4-403.
N.J.S.A. 12A:4-407, which provides for the payor bank's subrogation to the rights of parties to whom payment was made over a stop order in given circumstances, has no application; the payor bank never paid the item and enjoys no rights of subrogation against anyone.
[2] There is no question but that defendant bank had the power to order that payment be stopped. The check in question was not a cashier's check, that is, a check drawn by a bank on itself. A cashier's check is a bill of exchange, accepted for payment as soon as it is issued. A bank which issues a cashier's check cannot stop payment on it. Nat. Newark & Essex Bank v. Giordano, 111 N.J. Super. 347, 351 (Law Div. 1970). Rather, the check in this case is a "bank check," a check drawn by one bank on its account in another bank. The drawer bank on such a check has the right to issue a stop payment to the drawee bank. Citizens Nat. Bank, Englewood v. Ft. Lee S. & L. Assn., 89 N.J. Super. 43, 51 (Law Div. 1965).