173 N.J. Super. 598 (1980)
414 A.2d 1367
BRUCE NEWMAN, PLAINTIFF-APPELLANT,
v.
FIRST NATIONAL STATE BANK OF TOMS RIVER, N.J., DEFENDANT-RESPONDENT, AND LOIS SYKES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1980.
Decided May 8, 1980.
*599 Before Judges SEIDMAN, MICHELS and DEVINE.
Fred J. Gelb argued the cause for appellant.
Diane Ault Costantini argued the cause for respondent (Sutton, Heim & O'Malley, attorneys).
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiff Bruce Newman appeals from a judgment of the Ocean County District Court in favor of defendant The First National Bank of Toms River, N.J. (bank), dismissing his action to recover the face amount of a personal money order issued by *600 the bank. The critical issue posed on this appeal is whether a purchaser of a personal money order has the right to stop payment before acceptance or certification by the issuing bank. The county district court judge held that a personal money order is not the equivalent of a certified check, and "therefore is not an instrument which could render a stop payment order ineffective." He also held that Sykes, who purchased the money order from the bank, was a customer of the bank within the provision of N.J.S.A. 12A:4-403(1), and consequently had the right to demand the stop payment order. We agree and affirm.
The parties stipulated that on August 22, 1978 a person identifying herself as defendant Lois Sykes (Sykes) purchased a personal money order in the amount of $900 at the main branch of the bank in Toms River, New Jersey. The bank, in accordance with its usual practice, encoded the money order in the requested amount and issued it to Sykes, leaving the date, the payee and signature lines blank. Sykes took the money order and left the bank. On the same day, and without the bank's knowledge, a woman, who also represented herself as Sykes, went to Newman's Lakewood Nursing Home in Lakewood, New Jersey, with a Robert Earl Jones. This woman produced the money order issued by the bank and asked plaintiff if he would cash it. She informed plaintiff that the money order was "good" but that she did not know anyone in Lakewood. Plaintiff agreed to cash the money order and went with her and Jones to the Lakewood office of the Garden State Bank. Jones filled in plaintiff's name on the payee line and signed his own name on the signature line at the bottom of the money order. Plaintiff then deposited it in the Garden State Bank and gave the woman the $900.
On August 24, 1978 the woman who had purchased the money order from the bank two days earlier, returned to the bank. She informed the bank that the money order had been lost or stolen and requested that payment be stopped. After being *601 identified by the teller who had issued her the money order, she signed a stop-payment order which read as follows:
The undersigned hereby agrees to hold you harmless for said amount and from all expenses, costs, attorney's fees incurred by you on account of your refusing to pay the said check and not to make any claim against you on account of payment if same occur through accident.
Subsequent to the execution of the stop-payment order the $900 money order was received by the bank for collection. The bank refused payment and returned the money order through the collection process, indicating that the payment had been stopped. Plaintiff thereupon instituted this action against the bank and Sykes. Sykes failed to answer plaintiff's complaint or the bank's cross-claim for indemnification.
The instrument issued by a bank, commonly referred to as a "personal money order," is not defined by the Uniform Commercial Code. In fact, it has been described as a "maverick." Comment, "Personal Money Orders and Tellers Checks: Mavericks Under the U.C.C.," 67 Colum.L.Rev. 524, 525 (1967); State v. LaRue, 5 Wash. App. 299, 487 P.2d 255, 257 (Ct.App. 1971). However, it is clear that the personal money order here under consideration has the characteristic of a check in that it constitutes "a draft drawn on a bank and payable on demand," N.J.S.A. 12A:3-104(2)(b). In this regard, the court in Garden Check Cash. Serv., Inc. v. First Nat'l City Bank, 25 App.Div.2d 137, 267 N.Y.S.2d 698 (App.Div. 1966), aff'd o.b. 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566 (Ct.App. 1966), equated a personal money order with a personal check, stating:
The relationship between defendant and the purchaser of the check is reasonably clear. The latter deposited with defendant a sum of money and received therefor a writing in which defendant plainly appeared as drawee. The novel feature of the instrument was that the prospective names of drawer and payee were blank. Defendant was not primarily liable thereon (Negotiable Instrument *602 Law §§ 20, 37; Uniform Commercial Code §§ 3-104(1)(a), 3-401(1)) and such liability did not arise until there was certification or acceptance of the instrument. (Negotiable Instrument Law §§ 220, 325; Uniform Commercial Code §§ 3-409(1); 3-410; 3-411). See generally 41 N.Y.Jur., Negotiable Instruments §§ 374-375.
We see small difference between the present transaction and one where a person deposits with a bank a sum of money and receives a quantity of blank checks. The obvious difference is that here a single deposit was made and a single blank check received with the amount of the deposit inserted therein. Thereafter the procedure followed the normal and customary pattern  the purchaser filled in the name of a payee, signed his name and address and delivered the instrument. Thereupon it became a negotiable instrument subject to all the rights and provisions of the then Negotiable Instruments Law. Defendant for its own purposes may have coined the words "Personal Money Order" and "Register Check" appearing on the instrument but these words in no way altered the applicable legal principles. The purchaser under his contract with defendant was the sole person who might draw on the fund and he had the clear right to stop payment prior to acceptance by the bank (American Defense Society v. Sherman National Bank of New York, 225 N.Y. 506, 122 N.E. 695)  a right since accorded a bank's customer by statute (Uniform Commercial Code § 4-403). This conclusion is fortified by decisions in another jurisdiction where, unlike this case, a legal "bank money order" signed by an officer of the issuing bank was held to be the equivalent of a cashier's check. (State ex rel. Babcock v. Perkins, 165 Ohio St. 185, 134 N.E.2d 839; Cross v. Exchange Bank Co., 110 Ohio App. 219, 168 N.E.2d 910).
........
The general principle is well established "that notwithstanding the agreement which bankers make with their customers, to pay their checks to the amount standing to their credit, a check-holder can take no benefit from this agreement, and that a check does not operate as a transfer, or assignment of any part of the debt, or create a lien at law or in equity upon the deposit." (Aetna National Bank v. Fourth National Bank, 46 N.Y. 82, 87). The drawee enters into no contract relations with the holder unless and until the instrument is accepted. (11 Am.Jur.2d, Bills and Notes, § 593; Henderson v. Lincoln Rochester Trust Co., 303 N.Y. 27, 31, 100 N.E.2d 117, 119; Negotiable Instruments Law §§ 325, 220; Uniform Commercial Code, §§ 3-409, 3-410, 3-411). [267 N.Y.S.2d at 702-703]
See also Thompson v. Lake County Nat'l Bank, 47 Ohio App.2d 249, 353 N.E.2d 895, 987-988 (Ct.App. 1975); State v. LaRue, *603 supra, 487 P.2d at 258; Krom v. Chemical Bank New York Trust Co., 38 App.Div.2d 871, 329 N.Y.S.2d 91, 92-93 (App.Div. 1972). See also Comment, "Personal Money Orders and Tellers Checks: Mavericks Under the U.C.C.," supra at 527, n. 26.
Under the Code payment may be stopped on a personal check or personal money order prior to payment, acceptance or certification. The applicable provision of the Code, N.J.S.A. 12A:4-403, in pertinent part, provides:
(1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in 12A:4-303.
N.J.S.A. 12A:4-303, provides, in pertinent part, that:
(1) Any knowledge, notice or stop-order received by, legal process upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:
(a) accepted or certified the item.
Here the bank did not "accept" or "certify" the money order prior to the issuance of the stop-payment order. The term "acceptance" is defined in N.J.S.A. 12A:3-410 as follows:
(1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.
The New Jersey study comment to this section of the Code is instructive:

*604 1. Anyone can draw a draft or check on any person or bank, and it is obvious that the drawer's act of drawing, in and of itself, cannot make the drawee liable. The drawee is not liable on a draft or a check until he has assented in writing to the order of the drawer. This assent is called an "acceptance" in the case of the draft, and a "certification" in the case of a check.
Although acceptance of an instrument is generally manifested by such words as "accepted" in the case of a draft, or "certified" in the case of a check, the Code expressly provides that an acceptance may consist of the drawee's signature alone. N.J.S.A. 12A:3-410(1). However, it is essential that the instrument at least contain the signature of the drawee. See 2 Anderson, Uniform Commercial Code (2 ed. 1971), § 3-410:6 at 978; N.J.S.A. 12A:3-401(1). The money order purchased by Sykes was not signed by any authorized representative of the bank, nor did it bear the signature of the bank. The mere fact that the printed name of the bank appeared on the face of the money order was not sufficient to constitute its signature and therefore was not an acceptance of the instrument for payment within the purview of N.J.S.A. 12A:3-401(1). Consequently, Sykes, as the purchaser of the money order, had the right to stop payment.
Furthermore, issuance of the personal money order, just as any check or draft, did not of itself operate as an assignment of any funds in the hands of the bank available for its payment, and the bank was not liable on the instrument until it accepted it. N.J.S.A. 12A:3-409(1). See 2 Anderson, Uniform Commercial Code (2 ed. 1971), § 3-409:4, at 971.
Since Sykes effectively stopped payment of the money order before it was presented to the bank by plaintiff, the bank was not under any liability to plaintiff. Thompson v. Lake County Nat'l Bank, supra, 353 N.E.2d at 898. Garden Check Cash. Serv., Inc. v. First Nat'l City Bank, supra, 267 N.Y.S.2d at 703; Krom v. Chemical Bank New York Trust Co., supra, 329 N.Y.S.2d at 92.
*605 In arriving at this conclusion, we disagree with plaintiff's contention that since Sykes was not a party to the money order, she had no right to stop payment. Sykes, as the purchaser of the money order, was a customer of the Bank and therefore had the statutory power to stop payment. N.J.S.A. 12A:4-104(1)(e); N.J.S.A. 12A:4-403(1); Garden Check Cash. Serv., Inc. v. First Nat'l City Bank, supra. Plaintiff's reliance on Bruno v. Collective Federal S. & L. Ass'n, 147 N.J. Super. 115 (App.Div. 1977), to support his argument that since Sykes was not a party to the money order, her rights were not governed by the Code, is misplaced. In Bruno, the plaintiff withdrew $5,000 from her savings account and, pursuant to her request, the savings and loan association issued its own check drawn on its account in the Federal Home Loan Bank and made it payable to plaintiff's uncle. Plaintiff's savings passbook was debited to reflect the withdrawal. Later, plaintiff sought to stop payment of her bank's check, drawn on the Federal Home Loan Bank. However, since plaintiff was not a customer of the Federal Home Loan Bank, she had no right to stop payment on that check and therefore the provisions of the Code were not applicable. Here, however, in contrast with the factual situation present in the Bruno case, plaintiff was a customer of the Bank, and the Bank never accepted the money order prior to presentation for payment by plaintiff. Therefore, the Bank here had the legal duty to honor the stop-payment order. See N.J.S.A. 12A:4-403(1).
Accordingly, the judgment is affirmed.