851 A.2d 667 (2004)
370 N.J. Super. 399
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
TRAVELERS EXPRESS COMPANY, INC., Defendant-Respondent,
and
Rodney Wallace, Alicia Saiters, Francisco Ortiz, Mark Woodhouse, Mike Jackson, Kimberly Williams, Peter Malero, Juan Pac, Jabu Johnson, Billy Rosario, Sharon Harris And Gregory Jones, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 2004.
Decided June 29, 2004.
*668 Robert J. Triffin, appellant, argued the cause pro se.
Kathryn J. Bergstrom (Gray, Plant, Mooty, Mooty & Bennett) of the Minnesota Bar, argued the cause for respondent (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Anthony J. Borelli, on the brief).
Before Judges COBURN, WELLS and C.S. FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
Checks Cashed Etc., LLC and G & R Check Cashing Corp. assigned to plaintiff Robert J. Triffin any causes of action they may have obtained from having cashed seventeen money orders which were later dishonored. Triffin commenced suit in Special Civil Part against twelve individuals whose signatures appear on the money orders, but made no attempt to serve them with process. Triffin also sought relief against Travelers Express Company, Inc., which defended the claim by asserting that the money orders were stolen and the signatures appearing on the money orders were unauthorized.
In seeking summary judgment, Travelers provided the following undisputed explanation as to a typical money order transaction:
The purchaser pays the agent the amount for the desired money order, plus a small fee. After receiving payment from the purchaser, the agent imprints the money order with the purchased amount using a specialized imprinting machine and issues the money order to the purchaser.
Once the money order is issued, the purchaser is then authorized to name the payee and sign the instrument. The purchaser must write in the name of the *669 payee and sign at a line entitled "Purchaser, Signer for Drawer."
[Travelers] is the entity obligated to pay on the money order and authorizes payment through the signature of its authorized representative, the purchaser.
Travelers asserted, also without contradiction, that the seventeen money orders were stolen from a Brooklyn pharmacy. Once alerted to the theft, Travelers stopped payment, but the money orders were presented to and cashed by Triffin's assignors.
Triffin presented no evidential information in response to the motion for summary judgment. Instead, he submitted his own certification which merely described the appearance of the money orders in question. The trial judge correctly recognized that the material factsthe money orders were stolen, later signed by an unauthorized person, and cashedwere not in dispute, and the matter was ripe for summary judgment. The judge rejected Triffin's legal arguments and granted Travelers' motion for summary judgment. We affirm.
When a lost or stolen money order, unsigned by the purchaser, is later presented by the thief or finder, the majority view is that the issuing bank is not liable. See William D. Hawkland, Hawkland Uniform Commercial Code Series, § 3-401:8 (rev. 2002). This approach was followed in Trump Plaza Assocs. v. Haas, 300 N.J.Super. 113, 118, 692 A.2d 86 (App.Div.), certif. denied, 151 N.J. 75, 697 A.2d 547 (1997), where we rejected the contention that personal money orders are "the equivalent of cash or have the credit of the issuing bank behind them." Instead, we re-enforced an earlier holding that "a personal money order is a check and that a bank should not be deemed to have accepted a money order merely because its name and logo are printed on the face of the instrument." Trump Plaza, supra, 300 N.J.Super. at 117, 692 A.2d 86 (citing Newman v. First Nat'l State Bank of Toms River, 173 N.J.Super. 598, 604, 414 A. 2d 1367 (App. Div.1980)).
However, a determination of the transactional relationship of the persons identified by the instrument turns upon the instrument's entire content. In many instances, as in Trump Plaza and Newman, there is "small difference" between a transaction memorialized by a money order and the circumstance "where a person deposits with a bank a sum of money and receives a quantity of blank checks[;][t]he obvious difference is that [with most money orders] a single deposit was made and a single blank check received with the amount of the deposit inserted therein." Newman, supra, 173 N.J.Super. at 602, 414 A.2d 1367 (quoting, with approval, Garden Check Cash. Serv., Inc. v. First Nat'l City Bank, 25 A.D.2d 137, 267 N.Y.S.2d 698, 702 (App.Div.), aff'd o.b., 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566 (1966)).
Here, the particular appearance and substance of the money orders compel a different understanding of Travelers' relationship to the transaction than that engaged in by the banks in the authorities cited above. That is, Travelers' name is embossed on the money orders, like the banks in Trump Plaza and Newman, but in a materially different way. The money orders in question contain an additional description of Travelers' role in the transaction"Issuer/Drawer: Travelers Express Company, Inc."which logically persuades that, in a normal transaction, Travelers is ultimately intended to be the drawer of the money orders. See N.J.S.A. 12A:3-103(a)(3) ("`Drawer' means a person who signs or is identified in a draft as a person ordering payment."). And, while *670 it is true that the nature of a transaction between Travelers and a purchaser, like the transactions in Trump Plaza and Newman, required that the purchaser deposit the amount of the money order with Travelers and pay the required fee for the service, unlike the transactions in Trump Plaza and Newman, the purchaser, by taking those steps, becomes authorized to execute the money order as the agent or representative of the drawer, Travelers. When these events lawfully occur, the terms of the instrument require Travelers to pay the money order. Triffin, thus, correctly argues that Travelers is the drawer in a transaction which occurs in the manner outlined above. However, Triffin incorrectly disregards the significance of the particular transactions between the thieves or finders of these stolen money orders and his assignors, as well as the undisputed fact that none of these money orders contains an authorized signature.
It is true that a document may be signed in a great variety of ways, including by embossing a name on an instrument. But an effective signature requires that an instrument be "executed or adopted by a party with present intention to authenticate." N.J.S.A. 12A:1-201(39) (emphasis added); see also N.J.S.A. 12A:3-401(b) (A "signature may be made manually or by means of a device or machine, and by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing."). While Travelers' name is embossed on the money orders and alongside the words "Issuer/Drawer," the remainder of the document clearly indicates that an additional signaturethat of the purchaser is required to authenticate the writing. That is, immediately above the preprinted language upon which plaintiff relies ("Issuer/Drawer: Travelers Express Company, Inc.") appear three blank lines which are to be filled in, as indicated on the preprinted document, with the name of the payee, the signature of the "purchaser, signer for drawer," and the address of the purchaser. To be authenticated and effective, the instruments required authorized signatures in the "purchaser, signer for drawer" space.[1] Since there was no dispute that the money orders in question were stolen and the signatures were not made by purchasersbecause the money orders were not purchasedwe must conclude that the money orders do not contain authorized signatures.
While the signatures in the "purchaser, signer for drawer" spaces on these money orders were made by persons who were not purchasers, these signatures may still have significance because the Uniform Commercial Code does not conclude that such signatures are nullities. Instead, the Code describes such signatures as "unauthorized." See N.J.S.A. 12A:1-201(43) ("`Un-authorized' signature or indorsement means one made without actual, implied, or apparent authority and includes a forgery."). An unauthorized signature, however, is "ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value." N.J.S.A. 12A:3-403(a). Accordingly, Triffin could not obtain relief on these money orders against anyone other than the persons who actually signed on the lines marked "purchaser, signer for drawer." See Triffin v. Pomerantz Staffing Serv., Inc., 370 N.J.Super. 301, 851 A.2d 100 (App.Div.2004); *671 Perini Corp. v. First Nat'l Bank, 553 F.2d 398, 404 (5th Cir.1977) ("The forgery does not operate as the ostensible drawer's signature.").
We additionally observe that this case does not involve a holder's claim that a person or entity, such as Travelers, failed "to exercise ordinary care [which] substantially contribute[d] to an alteration of an instrument or to the making of a forged signature on an instrument." N.J.S.A. 12A:3-406(a). The record is bereft of any contention that the blank money orders were negligently handled or stored in a way which might have contributed to their theft and subsequent illegal presentment.
We also note that any such negligence on the part of the owner of an instrument could only preclude it "from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection," i.e., a holder in due course. Ibid. Here, Triffin could not claim that his assignors were holders in due course. The good faith requirements of holder in due course status were not present here, as demonstrated by the absence of any evidence that Triffin's assignors heeded any of the warnings on, or sought any information about, the money orders.
Each money order contained a warning on the reverse side:
This Money Order will not be paid if it has been forged, altered, or stolen and recourse is only against the presenter. This means that persons receiving this money order should accept it only from those known to them and against whom they have effective recourse.
Each money order contained a statement, directly below this warning, advising that information concerning the money order could be obtained from Travelers, whose address and toll free telephone number were also provided. Thus, a simple, toll free telephone call would undoubtedly have revealed that the instruments were stolen. Triffin's assignors, especially because they are in the business of making a profit by cashing such instruments, cannot claim holder in due course status by blithely and blindly cashing such instruments. The very appearance of these money orders, with telltale unmatching serial numbers, should have caused Triffin's assignors to be suspicious about their legitimacy, and should have prompted them to seek information from Travelers. By failing to do so, Triffin's assignors could not be deemed holders in due course. N.J.S.A. 12A:3-302(a)(1); Triffin v. Pomerantz Staffing Serv., Inc., supra.
Affirmed.
NOTES
[1] We need not decide whether such money orders become effective if a purchaser signs on the "purchaser, signer for drawer" line, but does not fill in the payee and address lines. See N.J.S.A. 12A:3-115.