OPINION
{¶ 1} Citizens National Bank of Southwest Ohio (hereinafter "Citizens") is appealing the judgment of the Montgomery County Common Pleas Court, which granted summary judgment to National City Bank (hereinafter "National").
 {¶ 2} In early 2002, Roger and Beverly Cook decided to refinance the mortgage on their property. The Cooks' original mortgage was held by Citizens, who arranged for them to contact Equity Land Title Association ("ELTA") for refinancing. The Cooks signed a promissory note payable to Citizens and in exchange Citizens issued two cashier's checks payable to ELTA in the amount of $500,000 and $34,552.60. ELTA simultaneously issued six checks payable to Citizens drawn on ELTA's National City account for $532,995.45. The cashier's checks were deposited in ELTA's business account at National on March 27, 2002. At this time, National issued a provisional credit to ELTA's account for $534,552.60.
 {¶ 3} However, ELTA's owner, Steve Clayton had been involved in an illegal check-kiting scheme to inflate balances in ELTA's accounts with four banks, including National but not Citizens. Due to the fact that Clayton was a longtime personal friend of Citizens' senior vice president of lending, Citizens learned of this scheme during the wee hours of the morning of March 28th and that ELTA would be going out of business. On March 28th, Citizens stopped payment on the cashier's checks, waiting for the six ELTA checks to clear. Also that day, National placed a hold on ELTA's account, not allowing any money to leave the account. National claims that this hold was placed on the account at 10:00 a.m. National returned the six ELTA checks for insufficient funds. National has demanded payment from Citizens, but Citizens has refused. National claims that when it had to reverse the credit on the account it suffered a $534,522.60 loss on the account. Overall, National had a $1,300,683.95 shortfall on the ELTA account.
 {¶ 4} National City filed this complaint for the dishonor of the cashier's check. After a period of discovery, Citizens filed motions for summary judgment and to amend its complaint to add claims for unjust enrichment and restitution. National filed a motion for summary judgment. The trial court granted National's motion and denied Citizens' motions because it found that National was a "holder in due course". Citizens appeals, raising the following assignments of error.
 {¶ 5} "[1.] The trial court erred to the prejudice of defendants-appellants in granting plaintiff national city bank's motion for summary judgment.
 {¶ 6} "[2.] The trial court erred to the prejudice of defendant in denying plaintiff's motion to amend complaint and/or granting summary judgment to the plaintiff on defendant's proposed counterclaim for unjust enrichment/restitution.
 {¶ 7} "[3.] The court below erred in failing to grant summary judgment to citizens."
 {¶ 8} Our review of the trial court's decision to grant summary judgment is de novo. Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183,1997-Ohio-221; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66.
 {¶ 9} Appellant's First Assignment of Error:
 {¶ 10} Citizens argues that the trial court erred in granting summary judgment to National when it determined that National was a holder in due course and thus not subject to Citizens' defenses for dishonoring the cashier check because National had not given value for the check and had notice that there were valid outstanding claims to the funds in the account. We find that summary judgment was proper because Citizens had no defenses to dishonoring the cashier's check and thus do not reach the question of whether National was a holder in due course.
 {¶ 11} O.R.C. 1303.52, which is the adoption of the Uniform Commercial Code ("UCC") 3-412, provides that "[t]he issuer of a * * * cashier's check * * * is obliged to pay the instrument in accordance with either of the following:
 {¶ 12} "(A) According to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder
• * *." R.C. § 1303.52.
 {¶ 13} Although R.C. 1304.32(A) provides that a customer has a right to have a stop payment made on his account, Comment 4 to this statute clarifies that this provision of the code does not apply to cashier's checks, stating "a customer purchasing a cashier's check * * * has no right to stop payment of such a check under subsection (a). If a bank issuing a cashier's check * * * refuses to pay the check as an accommodation to its customer or for other reasons, its liability on the check is governed by Section 3-411."
 {¶ 14} UCC section 3-411, which addresses the refusal to pay cashier's checks, was adopted by the Ohio legislature in O.R.C.1303.51. Official Comment 1 to this section states, "A debtor using any of these types of checks [cashier's checks, teller's checks, and certified checks] has no right to stop payment. Nevertheless, some banks will refuse payment as an accommodation to a customer. [This section] is designed to discourage this practice." Moreover, if a bank wrongfully refuses to pay a cashier's check, "the person asserting the right to enforce the check is entitled to compensation for" expenses, loss of interest, and consequential damages. R.C. 1303.51(B).
 {¶ 15} Generally, Ohio cases have stated that a bank may not stop payment on a cashier's check except when fraud is involved in the procurement of the cashier's check or if there is failure of consideration. Thompson v. Lake County National Bank,
(1975), 47 Ohio App.2d 249, 252-253; Johnson v. Dollar Bank
(Dec. 10, 1999), Geauga App. No. 98-G-02177; Dayton Area Sch.EFCU v. Nath (Sept. 4, 1998), Montgomery County App. No. 16956;Gallaher v. Fryman (June 23, 1986), Warren App. No. CA85-11-089.
 {¶ 16} The defense of failure of consideration cannot be asserted in a situation where the bank received full consideration for the issuance of the cashier's check. Nath,
supra (holding that the signing of a promissory note amounts to consideration for issuing a cashier's check). Moreover, a bank can only assert the defenses of fraud or failure of consideration against the party responsible for the failure to pay for the cashier's check — the purchaser of the check. Leo Syntax AutoSales, Inc. v. Peoples Bank Sav. Co. (1965), 6 Ohio Misc. 226,227.
 {¶ 17} National argues that Citizens cannot utilize either the defense of fraud or failure of consideration as justification for its stop payment on the cashier check in this situation. National argues that since fraud can only be raised against the purchasers of the cashier's check, fraud is not a defense for Citizens against National. Therefore, Citizens can only raise the defense of failure of consideration. Since a bank can only assert a failure of consideration defense against the purchaser of the check, National argues Citizens can only raise this defense against the Cooks. Moreover, National points out that Citizens received full consideration for the issuance of the cashier's checks by the Cooks' signing of a promissory note.
 {¶ 18} On appeal, Citizens states that it has defenses based on fraud and failure of consideration, however it does not specify in its brief how the failure of consideration or fraud occurred. A review of the record demonstrates that before the trial court, Citizens illustrated how the defense of failure of consideration was available to itself. Citizens argued that Citizens itself was the purchaser of the checks — not the Cooks. Describing the transaction, Citizens stated that it provided to ELTA over $1,000,000, including cashier's checks and a $500,000 promissory note, in exchange for ELTA facilitating the closing on the refinancing of the property and returning approximately $500,000 to Citizens. Citizens argues that the consideration for the cashier check failed when National stopped payment for insufficient funds on the six checks issued by ELTA for Citizens.
 {¶ 19} However, as National pointed out below, this ignores the fact that the Cooks are clearly identified on the cashier's check as the remitters of the check. Moreover, it would be an illogical transaction for Citizens to be the drawer, drawee, and remitter of the cashier's check. Citizens has admitted that it is both the drawer and the drawee of the cashier's check. Revised Code 1303.01(A)(13) defines a remitter as "a person who purchases an instrument from its [drawer] if the instrument is payable to an identified person other than the purchaser." Therefore, Citizens cannot be both the remitter and the drawer as this would require it to purchase the cashier's check from itself.
 {¶ 20} As stated earlier, a bank may only raise the defense of failure of consideration against the purchaser of the cashier's check. Leo Syntax, supra. Since the Cooks are the purchasers of the cashier's check, the defense of failure of consideration can only be asserted against them — not National. Further, the Cooks paid valuable consideration for the cashier's check in the form of a signed promissory note to Citizens. Therefore, we agree with National that Citizens has no failure of consideration defense for its stop payment on the cashier's check.
 {¶ 21} Further, we see no manner in which Citizens can raise a defense of fraud to justify its stop payment of the checks. As stated above, the defense of fraud may only stand if one can demonstrate that there was fraud in the procurement of the cashier's check. Citizens has pointed to no instance of fraud in the Cooks' purchase of the cashier's check. Therefore, the defense of fraud is not available to Citizens as justification for its stopping payment on the cashier's check.
 {¶ 22} Additionally, a bank may only assert the claims of its customer if they are joined in the lawsuit. R.C. 1303.35(C) (UCC 4-403). In this matter, Citizens failed to join the Cooks in this lawsuit. As a result, Citizens cannot now raise any of the arguments or defenses the Cooks would have had available to them.
 {¶ 23} Thus, Citizens has no defenses to its stop payment of the cashier's check. As such, summary judgment in favor of National is proper. Although the trial court used different reasoning to reach this conclusion, we see no error in the grant of summary judgment for National. Citizens's first assignment of error is without merit and is overruled.
 {¶ 24} Appellant's second assignment of error:
 {¶ 25} Citizens argues that the trial court erred in denying Citizens motion to amend its complaint to add claims for equitable remedies based on its determination that National was a holder in due course and therefore that Citizens could not bring its equitable remedies claims against National. We disagree.
 {¶ 26} In Ohio, motions for leave to amend may generally be denied if there is a finding of bad faith, undue delay, or prejudice. Peterson v. Teodosio (1973), 34 Ohio st.2d 161, 175. Additionally, the denial of a motion to amend may be denied if the amendment of the complaint would be futile. Central MotorsCorp. v. City of Pepper Pike (1983), 9 Ohio App.3d 18, 20-21, citing Forman v. Davis (1962), 371 US 178, 182; Western Ins.Co. v. Lumbermans Mut. Ins. Co. (1985), 26 Ohio App.3d 137, 138.
 {¶ 27} The Ohio Supreme Court has stated that when the Ohio legislature has "codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative." Bolles v. Toledo Trust Co. (1944),144 Ohio St. 195, 197; see also Baggott v. Piper Aircraft Corp. (S.D. Ohio 1999), 101 F.Supp.2d 556, 561 (stating that when the general assembly has codified the law on a particular subject, the statute governs to the exclusion of the common law unless clear legislative intent is demonstrated that the statute is merely duplicative). Based on this statement, absent "clear legislative intent that the UCC is merely cumulative to the common law, the UCC governs to the exclusion of the common law." Amzee Corp. v.Comerica Bank — Midwest, Franklin App. No. 01AP-465, 2002-Ohio-3084, ¶ 46 (finding that where a company's employee forged company checks to pay her personal charge account at a bank, the company could not sue the bank on common law claims for conversion, negligence, and unjust enrichment because the UCC governed the transaction).
 {¶ 28} In Amzee, the Tenth District explained that strong policy reasons favor following the UCC requirements rather than common law. Id. ¶ 47. In order for the UCC to be effective, it must provide remedies that the parties can rely on being upheld. Id. We agree with the Tenth district that if parties are permitted to plead common law causes of action and thereby avoid the UCC, it will lose its reliability, uniformity, and certainty. Id ¶ 48. As a result, the objectives of creating a uniform code governing commercial transactions will be eliminated. Id. Thus, if the UCC with its numerous provisions governing rights and liabilities does not contain a provision that would provide relief to a party, the party may not avoid the UCC's limitations by raising a common law claim.
 {¶ 29} Relying on Amzee, National argues Citizens cannot raise common law equity claims because this area of the law has been usurped by the UCC. Thus, National asserts that like the plaintiff in Amzee, Citizens' only recourse must be found in the UCC. Since the UCC does not provide Citizens relief, Citizens cannot raise principles of equity to find the relief it seeks. Therefore, National asserts that the trial court was correct in refusing to allow Citizens to amend its complaint to add claims for equitable relief based on the common law. In contrast, Citizens attempts to distinguish Amzee because the appellate court noted in Amzee that the equities did not favor the plaintiff despite its attempt to raise equitable claims, whereas Citizens asserts that the rules of equity would favor it in this case.
 {¶ 30} However, we do not agree with Citizens that theAmzee court reached its conclusion that one cannot raise equitable remedies when the UCC does not provide him with relief simply because the plaintiff in Amzee would not recover under theories of equity. Therefore, we do not find Amzee
distinguishable from this case, but rather that it is persuasive in this matter. We agree with Amzee that the UCC gains its value from creating a uniform, reliable system of commercial remedies upon which businesses can rely. If parties to commercial transactions are permitted to raise claims based on common law equity principles rather than the remedies provided in the UCC then the reliability of the UCC is lost. As a result, we cannot agree with Citizens that a party can still bring common law equitable claims so long as that claim is not expressly prohibited by the UCC. If the UCC has spoken on an area of law then the common law equity claims for that area of law are superceded Unfortunately for Citizens, it has been unable to point to any provision of the UCC that would grant it relief from having to honor the cashier's check to National. Therefore, Citizens cannot raise equitable remedies in an attempt to avoid the provisions in the UCC. The denial of Citizens' motion to amend its complaint is proper as any claims by Citizens for equitable relief would be futile as these claims cannot be raised where the UCC has already governed. Citizens' second assignment of error is without merit and is overruled.
 {¶ 31} Appellant's third assignment of error:
 {¶ 32} Citizens argues that the trial court should have granted its motion for summary judgment. We disagree.
 {¶ 33} As stated above, we found that summary judgment in favor of National was proper, and thus, we do not agree with Citizens that its motion for summary judgment should have been granted. The third assignment of error is without merit and is overruled.
 {¶ 34} Additionally, Citizens has filed a motion with this Court to strike portions of National's brief that refer to the deposition of Deirdre Mosley. However, as we did not rely on this deposition in reaching our conclusion, the argument is moot and the motion is denied. Also, National filed a motion to strike portions of Citizens' reply brief that it argues were not raised at the trial court level. However, as with Citizens' motion, we did not rely on the disputed portions of Citizens' reply brief in reaching our conclusion in this matter, and thus, the arguments are also moot. National's motion is also denied.
 {¶ 35} The judgment of the trial court is affirmed.
Fain, P.J. and Wolff, J., Concur.