[Cite as *DLK Co. of Ohio v. Meece*, 2013-Ohio-860.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| DLK CO. OF OHIO, et al., | : | |
| Plaintiffs/Appellees, | : | CASE NO.   CA2012-07-060 |
| - vs - | : | O P I N I O N<br>3/11/2013 |
| DAVID MEECE, | : | |
| Defendant/Third-Party Plaintiff/Appellant. | : | |
| - vs - | : | |
| JUDITH DEAN<br>d.b.a. J&J SPECIALTY, et al., | : | |
| Third-Party Defendants/Appellees. | : | |
| | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11 CV 79555

Marshall McCachran, 4197 South Gensen Loop, Cincinnati, Ohio 45245, for plaintiffs/appellees

Donald E. Oda II, P.O. Box 119, Springboro, Ohio 45066-0119, for defendant/third-party plaintiff/appellant

Jeffrey Dean and Judith Dean, 359 Seneca Drive, Batavia, Ohio 45103, third-party defendants/appellees, pro se

**S. POWELL, J.**

{¶ 1}   Defendant-appellant, David Meece, appeals from a judgment of the Warren

County Court of Common Pleas entered in favor of plaintiff-appellee, DLK Company of Ohio, in an action for conversion. For the reasons set forth below, we affirm the trial court's decision.

{¶ 2} In 2004, Donald Kellerman, the founder of DLK, purchased a commercial cabinetry business from Meece. Kellerman immediately hired Meece as a project manager, whose responsibilities included acquiring jobs, preparing invoices, ordering materials, and overseeing installations. In September 2006, Kellerman also hired an administrative assistant named Judi Dean to assist DLK's financial manager, Martha Crawford, in performing administrative and clerical tasks.

{¶ 3} In December 2006, Judi Dean and her husband, Jeffrey, entered negotiations with Kellerman to purchase DLK. On December 12, 2006, the parties signed a Proposed Bill of Sale for $156,000, but the Deans were unable to obtain financing to complete the sale. However, according to Judi Dean, even though they did not purchase DLK, she and her husband began paying some of DLK's bills through their own company, J&J Specialty.

{¶ 4} The parties again tried to negotiate a sale on June 12, 2007 by signing an Asset Purchase Agreement ("APA"). Pursuant to the APA, J&J Specialty would purchase all of DLK's inventory and assets, with the exception of accounts receivable for work performed prior to the signing date. However, Dean claims that immediately after signing the APA, she and Kellerman privately agreed that J&J Specialty would take all of the accounts receivable. Based upon this alleged conversation, Meece, who had begun working for J&J Specialty, signed six checks made payable to DLK for work performed prior to June 12, 2007, over to J&J Specialty.

{¶ 5} In October 2007, the Deans finally purchased DLK by providing Kellerman with a promissory note. By December 2007, the business relationship between Kellerman and the Deans had eroded completely, and in early 2008, J&J Specialty filed suit against DLK

- 2 -

and Kellerman in the Clermont County Court of Common Pleas for claims unrelated to this action. *J&J Specialty, L.L.C. v. DLK Co. of Ohio, Inc.*, Clermont C.P. No. 2008CVH00083. Kellerman counterclaimed for conversion of monies, conversion of equipment, fraud, breach of contract, unjust enrichment, and breach of fiduciary duty. However, after the Deans filed for bankruptcy, the parties settled under a release agreement and the trial court dismissed the case with prejudice.

{¶ 6} In April 2011, DLK filed a conversion action against Meece, alleging that Meece had forged Kellerman's and DLK's signatures on six checks payable to DLK during the time period of June 15, 2007, to September 21, 2007. DLK alleged that these forgeries caused accounts receivable intended for DLK to be wrongfully diverted to J&J Specialty.

{¶ 7} Meece subsequently moved for summary judgment, claiming that DLK's conversion action was barred by the statute of limitations and collateral estoppel. The court denied Meece's motion, and the case subsequently went to trial. After a bench trial, the court found that Meece was liable for conversion, and awarded DLK damages in the amount equal to the six checks, totaling $50,286.70.

{¶ 8} Meece timely appeals, raising three assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} DLK/KELLERMAN'S CLAIMS ARE BARRED BY THE APPROPRIATE STATUTE OF LIMITATIONS[.]

{¶ 11} Meece first argues that DLK's conversion claims were time-barred by the three-year statute of limitations set forth in Uniform Commercial Code Section 3-118, as codified in R.C. 1303.16(G)(1). Meece claims that the statute of limitations ran in 2010, three years after the alleged conversion occurred. Because DLK filed suit in 2011, Meece asserts that the case should have been dismissed.

{¶ 12} DLK counters that its claims were governed by the four-year statute of

limitations set forth in R.C. 2305.09, which relates to common law conversion claims. As such, DLK believes that its claims were not time-barred.

{¶ 13} In denying Meece's summary judgment motion, the trial court explained that UCC conversion claims typically involve actions by a drawer against a depositary bank that took the check bearing the forged endorsement. The trial court found that the UCC did not apply here, as DLK's conversion claims were against Meece, rather than a bank, for the return of accounts receivable due and owing to DLK, which Meece had wrongfully signed over to J&J Specialty. The trial court concluded that this issue sounded in common law, and therefore the case was governed by the four-year statute of limitations in R.C. 2305.09. As such, the court found that the case was not time-barred. We agree with the trial court's reasoning.

{¶ 14} R.C. 2305.09 provides a four-year statute of limitations period on claims relating to the recovery of personal property. R.C. 2305.09(B) states:

> Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> * * *
>
> (B) For the recovery of personal property, or for taking or detaining it * * *.

{¶ 15} Prior to August 19, 1994, R.C. 2305.09 was the only statute setting forth a statute of limitations for conversion claims. On August 19, 1994, however, the UCC was amended to provide a cause of action for conversion under R.C. 1303.60, as well as a three-year statute of limitations under R.C. 1303.16(G)(1).

{¶ 16} R.C. 1303.60, entitled "Conversion of Instrument," states:

> (A) The law applicable to conversion of personal property applies to instruments. An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment

- 4 -

with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(B) In an action under division (A) of this section, the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

(C) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

{¶ 17} R.C. 1303.16(G)(1) states:

(G) Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years after the cause of action accrues:

* * *

(1) An action for conversion of an instrument, an action for money had and received, or a similar action based on conversion * * *.

{¶ 18} The Supreme Court of Ohio directs that when courts are faced with determining which statute of limitations governs a given claim, they "must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors[;] the form is immaterial." *Lawyer's Coop. Publishing Co. v. Muething*, 65 Ohio St.3d 273, 277-278 (1992), quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). Further, in choosing the appropriate statute of limitations, courts must review the language of each statute, and choose the one that encompasses the alleged grievance. *Id.*

{¶ 19} Upon review, we find that the common law statute of limitations, and not the UCC statute of limitations, encompasses DLK's conversion claims. The UCC only

contemplates the conversion of "instruments." R.C. 1303.60; 1303.16(G)(1); 1303.03(C). Here, DLK's claims arose from the conversion of other property, namely, DLK's accounts receivable; the checks, or "instruments," were simply the means of the conversion. *See Estate of Alkhaldi v. Khatib*, 7th Dist. No. 04 MA 285, 2005-Ohio-6168. Because R.C. 1303.60 does not speak to DLK's claims, and R.C. 2305.09 does, we find that the trial court did not err in applying the four-year statute of limitations under R.C. 2305.09.

{¶ 20} We also reject Meece's claim that the UCC has eradicated all common law conversion claims. Ohio courts have held that "if the UCC has spoken on an area of law, then the common law equity claims for that area of law are superceded." [sic] *NCS Healthcare, Inc. v. Fifth Third Bank*, 8th Dist. No. 85198, 2005-Ohio-3125, ¶ 45. As discussed, the UCC has only spoken to the deprivation of property when that property is an *instrument*. R.C.1303.60. As a result, we find that the UCC has not displaced common law actions for conversion, when the conversion involves accounts receivable and not instruments.

{¶ 21} Lastly, we note that there is ample support for the trial court's conclusion that the UCC three-year statute of limitations only applies to conversion actions between a drawer and a depository bank. *See Natl. City Bank v. The Citizens Natl. Bank of Southwest Ohio*, 2nd Dist. No. 20323, 2004-Ohio-6060, ¶ 30; *Olympic Title Ins. Co. v. Fifth Third Bank of Western Ohio*, 2nd Dist. No. 20145, 2004-Ohio-4795, ¶ 31; *Amzee Corp. v. Comerica Bank-Midwest*, 10th Dist. No. 01AP-465, 2002-Ohio-3084 (UCC displaced drawer's common law conversion claim against depository bank, where drawer's employee stole checks, forged drawer's signature, and negotiated checks into her personal account); *Brentar v. Rupert*, 8th Dist. No. 73903, 1998 WL 895285 (Dec. 17, 1998). *See also Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir.2011).

{¶ 22} For the foregoing reasons, we find that the conversion action herein was

outside of the UCC, and therefore the trial court did not err in finding that DLK's claims were not time-barred by the common law four-year statute of limitations set forth in R.C. 2305.09.

{¶ 23} Meece's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} MEECE IS NOT LIABLE FOR CONVERSION BECAUSE DLK/KELLERMAN DID NOT PROVE THE ESSENTIAL ELEMENTS OF ITS CLAIM[.]

{¶ 26} Meece next argues that DLK did not establish the essential elements of its conversion claims. This argument lacks merit.

{¶ 27} Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *McIntosh v. Alum Cliff Industries*, 12th Dist. No. CA2001-03-049, 2001 WL 1568803, * 1 (Dec. 10, 2001), quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). The essential elements of conversion are: "(1) plaintiff's ownership or interest in the property; (2) plaintiff's actual or constructive possession or immediate right to possession of the property; (3) defendant's wrongful interference with plaintiff's property rights; and (4) damages." *Preston Trucking Co., Inc., Frontier Div. v. Lindamood*, 12th Dist. No. CA 86-12-076, 1987 WL 18758, * 2 (Oct. 19, 1987).

{¶ 28} At the outset, we note that the trial court failed to split the "ownership" element of conversion into two elements, namely, (1) ownership or interest, and (2) actual, constructive, or immediate right to possession. We would agree with Meece that we have done so in the past. *See Preston* at * 2. However, upon review, we find that any such mistake on the part of the trial court had no impact on the outcome of the proceeding.

{¶ 29} Meece first claims that DLK did not establish ownership of the accounts receivable for jobs done prior to June 12, 2007, because immediately after signing the APA, Kellerman orally agreed to transfer all of DLK's accounts receivable to J&J Specialty. The

trial court found that there was no oral agreement because, in essence, the parties did not have a mutual understanding of its terms. We agree with the trial court.

{¶ 30} "The general rule is that a written contract may be orally amended if the oral amendment has the essential elements of a binding contract." *Glenmoore Builders, Inc. v. Smith Family Trust*, 9th Dist. No. 24299, 2009-Ohio-3174, ¶ 33. In order to have a binding contract, there must be "an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Baird v. Crop Prod. Servs., Inc.*, 12th Dist. Nos. CA2011-03-003, CA2011-04-005, 2012-Ohio-4022, ¶ 19.

{¶ 31} During trial, Judi Dean and Kellerman each testified that just minutes after signing the APA, they made some sort of "gentleman's agreement" regarding the sale of DLK. According to Dean, Kellerman orally agreed to transfer all of DLK's accounts receivable to J&J Specialty. Conversely, Kellerman testified that he only orally agreed to extend the financing provision of the APA. Thus, there is no evidence that the parties mutually agreed to alter the terms of the APA with regard to the ownership of DLK's accounts receivable.

{¶ 32} In addition, any oral agreement made minutes after signing the APA would not have been binding, because the APA contained a no-oral modification clause, which precluded the parties from modifying the APA except with a signed writing. Neither party has set forth any evidence that they memorialized their alleged conversation in writing.

{¶ 33} For these reasons, we find that there is competent, credible evidence to support the trial court's decision that there was no oral agreement, and further, that the APA controlled the allocation of the accounts receivable.[1] As a result, we also agree with the trial

---

1. Apparently, Meece believes that Kellerman's testimony that the APA "never took place" because Dean could not timely achieve financing, means that the APA was not binding. Meece also cites Dean's testimony that financing "went south," and therefore she had to "figure out something else," as evidence of the same. However, this is not a fair reading of the testimony. When viewed in conjunction with Kellerman's additional testimony that they "were going to * * * give [Dean] a few additional months to try to find financing," it appears that the parties viewed untimely payment as inconsequential. This finding is supported by the fact that both parties acted in immediate reliance on the APA, where Kellerman handed over the DLK's inventory, customer lists, and rights to

- 8 -

court's finding that DLK established ownership of the accounts receivable for work performed prior to June 12, 2007.

{¶ 34} Meece also contends that at the time he endorsed the checks, J&J Specialty was paying all of the outstanding bills for the jobs associated with the accounts receivable, and therefore J&J was entitled to immediate possession of the receivables. However, Meece cannot overcome the fact that the checks were titled solely in DLK's name. Further, if J&J Specialty was paying bills for work done prior to June 12, 2007, any dispute over the accounts receivable was J&J Specialty's argument to make, not Meece's. Accordingly, we find that the evidence established that DLK had the immediate right to possess the accounts receivable for work done before June 12, 2007.

{¶ 35} We further find that DLK successfully demonstrated the remaining elements of conversion, namely, wrongful interference and damages, where Meece admitted to signing the checks over to J&J Specialty, and the amount of the checks is not in dispute.

{¶ 36} Meece's second assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} DLK/KELLERMAN'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

{¶ 39} In his final assignment of error, Meece argues that DLK's conversion claims were barred by the doctrine of collateral estoppel.

{¶ 40} Collateral estoppel "preclu[des] the relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action."

---

unfulfilled sales orders, and J&J Specialty began executing contracts and paying the bills. Thus, Kellerman's testimony that the APA "never took place" and Dean's statements about financing are not evidence of the parties' intent to free themselves from performance under the contract, but simply an inartful explanation of a nominal departure from the APA's terms. *See Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. No. CA2007-09-213, 2009-Ohio-1447.

*Providence Manor Homeowners Assn., Inc. v. Rogers*, 12th Dist. No. CA2011-10-189, 2012-Ohio-3532, ¶ 40, quoting *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 195 (1983).

{¶ 41} To successfully assert collateral estoppel, a party must plead and prove that (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; (4) the issue must have been identical to the issue involved in the prior suit. *Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 464 (12th Dist.2001).

{¶ 42} In 2008, J&J Specialty filed suit against DLK and Kellerman in Clermont County, and DLK filed several counterclaims, including a claim that the Deans had converted numerous checks, including two that are currently at issue. The Clermont County case was dismissed after Kellerman and the Deans executed a release agreement in May 2010. Meece believes that because the issue of conversion was already determined by the release agreement, DLK is collaterally estopped from pursuing any additional conversion claims. We disagree.

{¶ 43} First, the element requiring actual litigation is not satisfied. In the Clermont County suit, the parties terminated the action by a release agreement, not litigation. As the Ohio Supreme Court stated, "an absolute due process requisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Rogers*, 2012-Ohio-3532 at ¶ 46, quoting *Goodson*, 2 Ohio St.3d at 201. "When an issue is not actually litigated and decided in the previous proceeding, collateral estoppel does not preclude the issue from being litigated in the subsequent proceeding." *Rogers* at ¶ 46,

quoting *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 30.

**{¶ 44}** To this end, Ohio courts have previously held that issues resolved by settlement, rather than litigation, are not "actually and directly litigate[d]" for collateral estoppel purposes. *See Kissinger v. Pavlus*, 10th Dist. No. 01AP-1203, 2002-Ohio-3083; *Teagle v. Lint*, 9th Dist. No. 18425, 1998 WL 178461 (Apr. 15, 1998). *See also Dater v. Charles H. Dater Found.*, 1st Dist. Nos. C-020675, C-020784, 2003-Ohio-7148 (settlement and release agreement did not adjudicate disputed issue of fact, and did not constitute a final judgment upon the merits, therefore, collateral estoppel did not apply). Similarly, because DLK's conversion claims were resolved by a release agreement, we find that the issue was not "actually litigated" and "actually decided" in the Clermont County action. *See Hemphill v. Dayton*, 2nd Dist. No. 23782, 2011-Ohio-1613, ¶ 48. Additionally, the release agreement between J&J Specialty and DLK/Kellerman was completely silent as to conversion and to the six checks at issue, thus the parties did not admit to the matter. *Hamilton*, 145 Ohio App.3d at 464.

**{¶ 45}** Collateral estoppel does not apply for the additional reason that the issues herein are not identical to the issues in the Clermont County action. The issue in this case is whether Meece wrongfully converted accounts receivable in the amount of $50,286.70, whereas the issue in the Clermont County case was whether checks worth $97,499.40 were properly negotiated over to J&J Specialty.

**{¶ 46}** Meece also briefly claims that DLK is estopped from bringing this suit because DLK should have joined him in the Clermont County action, given DLK's counterclaim that Judi Dean "or someone at her direction" forged Kellerman's signature on various checks. However, we do not agree with Meece that such a sweeping, generalized statement is evidence that Meece was a necessary party to the prior action, particularly when additional,

- 11 -

unrelated checks were at issue in the Clermont County case, and DLK sought personally tailored relief from J&J Specialty for conversion of monies, as well as conversion of equipment, fraud, breach of contract, unjust enrichment, and breach of fiduciary duty.

{¶ 47} For these reasons, we find that Meece was not entitled to the benefit of collateral estoppel.

{¶ 48} Meece's third assignment of error is overruled.

{¶ 49} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.