724 A.2d 872 (1999)
319 N.J. Super. 72
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
FIRST UNION BANK, N.A. (Successor in Interest to First Fidelity Bank), Defendant-Respondent,
Kamani B. Smith, and Tarja A. Barr, and Integrated Payment Systems, Inc.; (Successor in Interest to American Express Travel Related Services, Co., Inc.) and Cheryl Gardner.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1999.
Decided March 9, 1999.
*873 Robert J. Triffin, plaintiff-appellant, pro se.
John D. North, Woodbridge, for defendant-respondent (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Jonathan W. Philipp and Jodi S. Eligberg, on the brief).
Before Judges KING, NEWMAN and FALL.
The opinion of the court was delivered by KING, P.J.A.D.

I
This is an appeal from a summary judgment in favor of defendant First Union Bank, a successor to First Fidelity Bank. Judge Mochary granted summary judgment against plaintiff Triffin, a commercial discounter and purchaser of dishonored instruments, in an action he brought as assignee of a negotiable instrument. See Triffin v. Cigna Ins. Co., 297 N.J.Super. 199, 687 A.2d 1045 (App.Div. 1997); Triffin v. Dillabough, 552 Pa. 550, 716 A.2d 605 (1998). We affirm the decision in the Law Division which was based on the efficacy of a "risk-shifting" agreement between plaintiff's assignor and defendant's predecessor, First Fidelity Bank.

II
On October 6, 1995 First Fidelity and American Express Travel Related Services Company, Inc. jointly issued a $929.15 Holiday Club check to Cheryl Gardner. Later in October 1995, Cheryl Gardner, or someone purporting to be her, cashed this Holiday Club check at D & S Check Cashing (D & S) *874 in Newark, New Jersey. Plaintiff alleges that when D & S cashed the check, it had no knowledge of any defenses or claims by any party to the check. At oral argument speculation arose that the check was lost or stolen and the payee Gardner's endorsement was forged before presentation at this inner-city check-cashing agency housed in a liquor store, but no one really knew the operative facts surrounding the negotiation or reason for stop-payment on the instrument.
Sometime after Gardner, or someone else, cashed the check at D & S, payment was stopped on the check. The record is unclear why payment was stopped but again the parties speculated at argument that the check might have been reported to the bank as lost or stolen. There is no claim in this action that First Fidelity was at fault or acted in bad faith in connection with the stop payment.
Since March 7, 1994 D & S and First Fidelity had operated pursuant to a written Cash Management Services Agreement. The parties refer to the Agreement as an "exculpatory" clause or agreement. We prefer to characterize it as a "risk-shifting" agreement, at least in respect to this context and this suit.
Paragraph four of the Agreement states:
4. WARRANTY. Although Bank [First Fidelity] shall provide the Services in accordance with the prevailing reasonable commercial standards of the banking industry, Bank shall not be responsible for any loss sustained by Customer [D & S Check Cashing] unless and to the extent that such loss was caused by Bank's gross negligence or willful misconduct. Except as may be expressly set forth in this Agreement or the Service Schedules, Bank makes no representations or warranties, express or implied, with respect to the Services or this Agreement or the Service Schedules. NOTWITHSTANDING ANY OTHER PROVISION HEREOF, IN NO EVENT SHALL BANK BE LIABLE TO CUSTOMER, REGARDLESS OF WHETHER ANY CLAIM IS BASED ON CONTRACT OR TORT, FOR ANY SPECIAL, CONSEQUENTIAL, OR INDIRECT DAMAGES, WHETHER OR NOT THE LIKELIHOOD OF SUCH DAMAGES WAS KNOWN TO BANK IN ADVANCE. [emphasis supplied.]
Paragraph eleven states the Agreement is to be construed in accordance with and governed by New York law.
On April 10, 1997 plaintiff purchased by assignment D & S's $929.15 claim on the instrument against First Union and then filed this suit. On November 7, 1997 after the motion judge denied plaintiff's initial summary judgment motion, the judge executed a consent order between plaintiff and defendant First Union in which the parties stipulated to certain material facts. The parties stipulated that D & S assigned all its rights in the check to plaintiff as alleged in the complaint. The parties stipulated that D & S had the legal status of a holder in due course of the check. The parties stipulated that D & S had an agreement with First Union "that provided for the exculpation of all manner of liability by First Union to D & S." The parties stipulated that First Fidelity issued the check and that all signatures "appearing thereon" were authentic and authorized. Finally, the parties stipulated that "the only issue for the court to resolve in this litigation ... is the scope and enforceability of the referenced exculpatory clause" in the Agreement.
On January 15, 1998 plaintiff filed a renewed motion for summary judgment and defendant cross-moved. Judge Mochary granted defendant's cross-motion for summary judgment, holding that under New York law the risk-shifting clause in the Agreement was enforceable against plaintiff, as successor to D & S.

III
From what we can tell in the record, the parties agreed that New York law applied, as the Agreement recited. We conclude that choice of law is of no real moment because under either New York or New Jersey law, the Agreement is enforceable as written and bars plaintiff's claim.
We reject plaintiff's argument that this clause in the Agreement:

*875 Although Bank [First Fidelity] shall provide the Services in accordance with the prevailing reasonable commercial standards of the banking industry, Bank shall not be responsible for any loss sustained by Customer [D & S Check Cashing] unless and to the extent that such loss was caused by Bank's gross negligence or willful misconduct.
covers only contract or tort claims and not statutory claims under the UCC. The clause clearly shifts the risk of "any loss sustained by Customer" to D & S without limitation or characterization relevant to this case. The gross negligence or willful misconduct condition or limitation does not apply herethe bank is not accused of any kind of fault or bad faith. Nor is the argument that the "exculpatory" clause should be either narrowly construed or ignored as violative of public policy persuasive. The bank is not seeking exculpation for fault or other wrongdoing but rather is seeking enforcement of a commercial risk-shifting clause, one desired by the bank in this high-risk type of relationship with a check cashing business.
The agreement was reached by commercial partiesa bank and a check-cashing agency, which apparently handles a high volume of transactions. Shifting the risk of loss is generally permitted by New York's UCC:
The effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement....
[N.Y.U.C.C. § 1-102(3) (McKinney 1962, emphasis added).]
Comment two to § 1-102(3) states, "freedom of contract is a principle of the code," and "an agreement can change the legal consequences which would otherwise flow from the provisions of the Act." N.Y.U.C.C. § 1-102(3), comment 2. In addition, Article Four of N.Y.U.C.C., which governs bank deposits and collections, also states that parties can generally shift the risk of loss by agreement:
The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.
[N.Y.U.C.C. § 4-103(1) (McKinney 1962, emphasis added).]
"In the absence of a showing that the standards manifestly are unreasonable, the agreement controls." N.Y.U.C.C. § 4-103(1), comment 2.
The Annotation to N.Y.U.C.C. § 4-103(1) states the section is "[g]enerally in accord with present law in permitting variation by agreement," "but contra to the [older] case law rule permitting banks to limit their liability for lack of ordinary care where the limitation is explicit." The provisions of N.Y.U.C.C. § 4-103(1) do not allow a bank to disclaim liability for its failure to exercise ordinary care, a circumstance not before us in the present case. See Broadway National Bank v. Barton-Russell Corp., 154 Misc.2d 181, 585 N.Y.S.2d 933, 939 (Sup.Ct.1992) ("an agreement may not eliminate the Code's duty of reasonable care"); Levy v. Chemical Bank, 124 Misc.2d 207, 475 N.Y.S.2d 771, 772 (District Court, Small Claims 1984) ("No agreement between the bank and its depositors can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care").
The OFFICIAL COMMENT to N.Y.U.C.C. § 4-103(1) states:
2. Subsection (1) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind. The agreements may not disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care and may not limit the measure of damages for such lack or failure, but this subsection like Section 1-102(3) approves the practice of parties determining by agreement the standards by which such responsibility is to be measured. In the absence of a showing that the standards manifestly are unreasonable, the agreement controls. Owners *876 of items and other interested parties are not affected by agreements under this subsection unless they are parties to the agreement or are bound by adoption, ratification, estoppel or the like.
See also New Jersey's similar Study Comment. N.J.S.A. 12A:4-103; Hy-Grade Oil Co. v. New Jersey Bank, 138 N.J.Super. 112, 119, 350 A.2d 279 (App.Div.1975), certif. denied, 70 N.J. 518, 361 A.2d 532 (1976); Best v. Dreyfus Liquid Assets, Inc., 215 N.J.Super. 76, 80, 521 A.2d 352 (App.Div.1987); White & Summers, Uniform Commercial Code § 21-2 at 353-54 (4th ed.1995). We conclude that paragraph four of the Agreement is enforceable and effectively shifted the risk of loss to the customer D & S. We enforce it as written against plaintiff as assignee of D & S because in this context the Agreement is not invoked to exonerate the bank from its own fault or lack of good faith.
Affirmed.