859 A.2d 751

ROBERT J. TRIFFIN, PLAINTIFF–APPELLANT, v. AMERICAN IN-
TERNATIONAL GROUP, INC., (A/K/A) AIG; (IND. & D/B/A)
AMERICAN HOME ASSURANCE COMPANY, DEFENDANT–
RESPONDENT, AND GARY JONES, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 12, 2004—Decided November 3, 2004.

Before Judges PETRELLA, LINTNER, and PARKER.

*Robert J. Triffin,* appellant, argued the cause pro se.

*David R. Cosgrove* argued the cause for respondent (*Stevens & Schwab,* attorneys; *Mr. Cosgrove,* on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Plaintiff, Robert J. Triffin, appeals from an order granting summary judgment in favor of defendants American International Group, Inc. and American Home Assurance Company (collectively AIG), dismissing a Special Civil Part complaint in which plaintiff sought recovery of $312 on a dishonored check issued by AIG and payable to defendant Gary Jones. We affirm.

AIG issued check number 07580752 on its account with Fleet Bank to Jones for workers' compensation benefits on October 4, 2001. The check was sent to 340 Orange Road in Montclair. Thereafter, Jones contacted AIG and advised it that he had never received the check. AIG learned that the check had been deposited on October 26, 2001, and processed by Fleet Bank, which debited AIG's account. AIG obtained an affidavit from Jones that his endorsement was a forgery, after which Fleet credited AIG's account. AIG sent Jones a second check in the same amount dated April 5, 2002, this time to the address of P.O. Box 885, Montclair.

On August 12, 2003, plaintiff purchased AIG's dishonored check number 07580752 from Montclair Check Cashing, which assigned its rights in the check to plaintiff and acknowledged in an assignment agreement that it did not know at the time it cashed and gave value for the check that it bore any evidence of forgery and that the check had been dishonored.[1]

In support of its motion for summary judgment, AIG presented Jones' affidavit of forgery and a certification from an employee, setting forth the factual circumstances under which it issued the second check and obtained a credit from Fleet Bank.

In response to the summary judgment motion, plaintiff requested oral argument and raised *N.J.S.A.* 12A:3–406, claiming that "[t]his case presents the classic fact pattern of who bears the responsibility for a check that is sent to a wrong address and the payee's endorsement as a result is subsequently forged." The judge decided the motion on the papers and issued a letter opinion on November 20, 2003, stating:

> Defendants' motion is granted and plaintiff's is denied. The reasons are simple. When [Montclair Check Cashing] cashed the check it was a forgery and therefore [Montclair Check Cashing] was not a holder in due course. In addition, plaintiff's assertion that defendant was negligent in sending the check to the wrong address

---

[1] Apparently, although not provided in the record on appeal, Montclair Check Cashing's account was charged after Fleet credited AIG's account and the loss ultimately fell on Montclair Check Cashing.

is without merit. At best the evidence shows that after a check mailed to a residence was stolen, a replacement check was sent to a safer post office box.

On appeal, plaintiff asserts:

*POINT ONE*

AS A THRESHOLD MATTER, THE TRIAL COURT COMMITTED REVERS-
IBLE PREJUDICIAL ERROR WHEN IT FOUND THAT THE DEFENDANT
JONES AND AIG PROPERLY RAISED IN THEIR ANSWER THE ISSUE OF
THE FORGERY OF JONES ENDORSEMENT.

*POINT TWO*

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, CON-
TRARY TO NEW JERSEY'S STANDARDS FOR SUMMARY JUDGMENT
MOTIONS AND THIS COURT'S CONTROLLING *N.J.S.A.* 12A:3-406 DECI-
SION, THE TRIAL COURT FOUND THAT NEGLIGENCE THAT CONTRIB-
UTED TO THE MAKING OF AN UNAUTHORIZED SIGNATURE MAY BE
ASSERTED AGAINST A HOLDER IN DUE COURSE.

*POINT THREE*

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT
FAILED TO HONOR PLAINTIFF'S TIMELY REQUEST FOR ORAL ARGU-
MENT IN OPPOSITION TO DEFENDANT AIG'S DISPOSITIVE MOTION TO
DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE.

We reject plaintiff's contentions and affirm the motion judge's order for slightly different reasons than those expressed in her November 20, 2003, letter opinion. *See Isko v. Planning Bd. of Livingston Tp.*, 51 *N.J.* 162, 175, 238 *A.*2d 457 (1968).

At the outset, we note that plaintiff did not raise AIG's failure to assert forgery as an affirmative defense before the motion judge in response to AIG's motion for summary judgment. Normally, an appellate court will decline to consider questions or issues not properly presented to the trial court when an opportuni-ty for such presentation is available, " 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.' " *Brown v. Tp. of Old Bridge*, 319 *N.J.Super.* 476, 501, 725 *A.*2d 1154 (App.Div.), *certif. denied*, 162 *N.J.* 131, 741 *A.*2d 99 (1999) (quoting *Skripek v. Bergamo*, 200 *N.J.Super.* 620, 629, 491 *A.*2d 1336 (App.Div.), *certif. denied*, 102 *N.J.* 303, 508 *A.*2d 189 (1985)). Therefore, we decline to consider plaintiff's Point I contention.

Nevertheless, we make the following observations. We are satisfied that plaintiff did not raise the issue of AIG's failure to assert an affirmative defense in opposition to the summary judgment motion because he was well aware of the probability that a forged instrument may have played an essential part in this case.[2] Further, AIG raised as a separate defense that plaintiff failed to state a cause of action upon which relief may be granted, thus reserving its right to move to dismiss the complaint for failure to state a cognizable claim under the applicable statutes. *O'Connor v. Altus*, 67 *N.J.* 106, 116, 335 *A.2d* 545 (1975).

We move on to plaintiff's contention that there remained material factual questions that AIG's conduct substantially contributed to an alteration of an instrument or to the making of a forged signature. Under *N.J.S.A.* 12A:3–203(b), if a transferee is not a holder in due course because the transferor did not endorse the instrument, the transferee nevertheless is entitled to enforce the instrument if the transferor was a holder in due course at the time of the transfer. *See N.J.S.A.* 12A:3–203, comment 2 (2004). One cannot be deemed a holder in due course where the instrument is taken with notice that it has been dishonored. *N.J.S.A.* 12A:3–302(a)(2). Thus, there is some question as to whether plaintiff, who entered into the assignment agreement knowing the check had been dishonored, could qualify as a holder in due course.

---

[2] Plaintiff, who is in the business of purchasing dishonored checks and taking assignments by which he seeks to recover as holder in due course from banks in the collection process, has been the subject of a certain amount of notoriety by filing over 4000 lawsuits. *See Triffin v. Mellon PSFS*, 372 *N.J.Super.* 3, 855 *A.2d* 2 (App.Div.2004); *Triffin v. Travelers Express Co., Inc.*, 370 *N.J.Super.* 399, 851 *A.2d* 667 (App.Div.2004); *Triffin v. Somerset Valley Bank*, 343 *N.J.Super.* 73, 777 *A.2d* 993 (App.Div.2001); *Triffin v. Bridge View Bank*, 330 *N.J.Super.* 473, 750 *A.2d* 136 (App.Div.2000); *Triffin v. First Union Bank, N.A.*, 319 *N.J.Super.* 72, 724 *A.2d* 872 (App.Div.1999); Tim O'Brien, *N.J. Appellate Courts Are Putting Frequent Filer's Feats to the Fire*, 177 *N.J.L.J.* 177 (July 19, 2004); Tim O'Brien, *Payroll Processors, Being Agents, Ruled Not Liable For Bad Checks*, 176 *N.J.L.J.* 513 (May 17, 2004); Tim O'Brien, *Frequent Filer Flagged As Fraud*, 176 *N.J.L.J.* 261 (April 26, 2004). At oral argument on appeal, Triffin indicated that he has filed over 15,000 lawsuits as assignee of dishonored checks.

Plaintiff maintains that even though he was aware that the check had been dishonored at the time of the assignment he is a holder in due course and can assert a claim against the maker because Montclair Check Cashing did not have reason to believe the check was forged at the time it paid the person presenting it. *See Triffin v. Mellon PSFS,* 372 *N.J.Super.* 3, 8, 855 *A.*2d 2 (App.Div.2004). We need not decide whether plaintiff's knowledge that the check had been dishonored at the time he purchased it precludes him from being a holder in due course because as a holder in due course he is unable to maintain this action against AIG.

■ As a holder in due course, a party who acquired the check from an assignor who paid the check in good faith without knowledge that the endorsement signature was unauthorized, can only recover against the unauthorized signer. *N.J.S.A.* 12A:3–403(a); *see N.J.S.A.* 12A:3–403, comment 2 (2004). Thus, neither plaintiff nor his assignor can assert a claim against AIG, assuming they did not have reason to believe that the check was forged. However, AIG is precluded from relying upon an unauthorized signature to avoid liability to a holder in due course where its "failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature." *N.J.S.A.* 12A:3–406(a).

■ The "phrase 'substantially contributes' indicates causal relationship and is the equivalent of the 'substantial factor' test applied in the law of negligence generally." *Gast v. Am. Cas. Co. of Reading, Pa.,* 99 *N.J.Super.* 538, 544, 240 *A.*2d 682 (App.Div. 1968). The burden of proving such a failure is on the party asserting preclusion. *N.J.S.A.* 12A:3–406(c). Here, plaintiff's only factual predicate for asserting negligence against AIG is the fact that the first check was sent to a street address and the second to a post office box. There is no indication that Jones did not reside or work at the street address where the first check was sent. There is also no factual support for the proposition that either Jones gave AIG the wrong address or that AIG sent the

check to the wrong address. Even if plaintiff established in his opposition to AIG's summary judgment that the first mailing was to the wrong address, which he did not, we have grave doubts that the mere issuance and mailing of a check to the wrong address is sufficient to establish a failure to exercise ordinary care that substantially contributes to the actual forgery of the instrument pursuant to *N.J.S.A.* 12A:3–406(a). *See Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 *F.*2d 192, 197 (8th Cir.1974); *First Nat'l Bank of Chicago v. MidAmerica Fed. Sav. Bank,* 303 *Ill.App.*3d 176, 236 *Ill.Dec.* 546, 707 *N.E.*2d 673, 678–79 (1999); *Twellman v. Lindell Trust Co.,* 534 *S.W.*2d 83, 90–91 (Mo.Ct.App. 1976); *Maddox v. First Westroads Bank,* 199 *Neb.* 81, 256 *N.W.*2d 647, 655 (1977); *Society Nat'l Bank of Cleveland v. Capital Nat'l Bank,* 30 *Ohio App.*2d 1, 5–8, 281 *N.E.*2d 563 (1972); *The Bank/ First Citizens Bank v. Citizens and Associates,* 82 *S.W.*3d 259, 265–66 (Tenn.2002); *Winkie, Inc. v. Heritage Bank of Whitefish Bay,* 99 *Wis.*2d 616, 623, 299 *N.W.*2d 829 (1981). In our view, it would be commercially unreasonable and unduly burdensome to require business entities to verify every address on file prior to sending a check to a payee based upon the unforeseeable assumption that the criminal act of forgery would take place if a check is received by someone other than the person to whom the check was addressed. Fortunately, we do not have to decide the issue on this record.

In a summary judgment motion, the court must grant the non-moving party all favorable inferences from the competent evidence presented. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). We do not pass upon credibility as that is reserved for the trier of fact. However, as the *Brill* Court re-emphasized, it is within our province "to determine whether there is a genuine issue for trial." *Ibid.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 249, 106 *S.Ct.* 2505, 2511, 91 *L. Ed.*2d 202, 212 (1986)). That the trier of fact makes determinations as to credibility "does not require a court to turn a blind eye to the weight of the evidence; the 'opponent must do more than simply show that there is some metaphysical doubt as to the material

facts.' " *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 *F.*2d 1358, 1363 (3rd Cir.1992), *cert. denied,* 507 *U.S.* 912, 113 *S.Ct.* 1262, 122 *L. Ed.*2d 659 (1993) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 *U.S.* 574, 586, 106 *S.Ct.* 1348, 1356, 89 *L. Ed.*2d 538, 552 (1986)). Plaintiff, by suggestion that the forgery resulted from mailings to two different addresses, has done no more than that.

Finally, we have no explanation from the motion judge as to why plaintiff's request for oral argument was denied. *See R.* 1:6–2(d) and *R.* 6:3–3(b)(1). However, under these circumstances, we are convinced that the motion judge nevertheless arrived at the proper result under the factual circumstances presented. We are therefore satisfied that her refusal to entertain oral argument is insufficient to require our intervention.

Affirmed.