**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2003-19

JOEL SCHWARTZ and
CORRINE O'HARA,

      Petitioners-Appellants,

v.

BOARD OF EDUCATION OF
THE TOWN OF PRINCETON,
MERCER COUNTY, and
BOARD OF EDUCATION OF
THE TOWNSHIP OF
CRANBURY, MIDDLESEX
COUNTY,

      Respondents-Respondents.

Argued April 28, 2021 – Decided May 28, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the New Jersey Commissioner of Education, Docket No. 231-9/18.

Stephen J. Edelstein argued the cause for appellants (Weiner Law Group, LLP, attorneys; Stephen J. Edelstein, of counsel and on the briefs).

Vittorio S. LaPira argued the cause for respondent Board of Education of the Town of Princeton, Mercer County (Fogerty & Hara, Esqs., attorneys; Vittorio S. LaPira, of counsel and on the brief; Robert D. Lorfink, on the brief).

Marc G. Mucciolo argued the cause for Board of Education of the Township of Cranbury, Middlesex County (Methfessel & Werbel, PC, attorneys; Marc G. Mucciolo, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Amna T. Toor, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Princeton residents, Joel Schwartz, and his wife, Corrine O'Hara, (petitioners) appeal from a December 17, 2019 final agency decision of the Commissioner of Education that summarily denied their appeal of the Princeton Board of Education's (PBOE) vote to renew its longstanding sending-receiving agreement (SRA) with the Cranbury Board of Education (CBOE). In doing so, the Commissioner adopted the decision of an Administrative Law Judge (ALJ) that summarily dismissed the petition. We affirm.

Petitioners and the PBOE were before us on an earlier appeal regarding the PBOE's vote on the same SRA. Schwartz v. Princeton Bd. of Educ., No. A-1151-18 (App. Div. Oct. 30, 2020) (slip op. at 12) (affirming a Law Division

2

order dismissing petitioners' complaint in lieu of prerogative writs). In that matter, petitioners alleged the PBOE violated the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, when it voted to renew the SRA for an additional ten-year term. Id. at 2. Pursuant to the SRA, the CBOE "pays tuition for its students in grades nine through twelve to attend Princeton High School." Id. at 3.

Relevant here, we noted the PBOE "discussed the proposed [SRA] for forty-five minutes in the presence of [about thirty members of the] public who physically attended the meeting and those who live streamed the meeting on YouTube." Id. at 10-11. Petitioners attended the June 12, 2018 meeting in person. Id. at 3. Pursuant to N.J.S.A. 10:4-12, the public was permitted the opportunity to comment on the proposal. Id. at 6.

At issue on this appeal are the reasons underscoring the PBOE's decision to renew the SRA, which were presented by the PBOE's attorney during the June 12 meeting. Those reasons included: the budgetary impact of the SRA, including budget cuts that would be necessitated by lost tuition if the SRA were not renewed; the relatively minimal cost of educating Cranbury students under the SRA in light of the fixed costs of operating Princeton High School (PHS); the insignificance of the Cranbury students' attendance on PHS's overcrowding; the impact of accepting Cranbury students on PHS's racial demographics; and

A-2003-19

the lack of legal precedent for the termination of an SRA by a receiving district. At the conclusion of the meeting, the SRA was renewed through the 2029-30 school term by seven of ten PBOE members, including CBOE's representative, Evelyn Spann. One member voted against renewal; two members abstained.

In September 2018, petitioners filed a verified petition of appeal with the Commissioner, seeking: a declaration that PBOE's resolution renewing the SRA was "null and void"; and reconsideration of the SRA "following the submission of a feasibility study." Petitioners also alleged Spann, as a CBOE representative, "was not permitted to vote on the SRA." After the PBOE and CBOE answered, the Commissioner transferred the case to the Office of Administrative Law as a contested case. Notably, petitioners served no discovery requests on the respondent boards. See N.J.A.C. 1:1-10.4(b) (providing parties in contested cases "shall immediately serve discovery requests").

In February 2019, the PBOE moved for summary decision pursuant to N.J.A.C. 1:1-12.5. The CBOE joined the motion, and petitioners filed opposition. After full briefing, the ALJ issued a thorough initial decision granting the motion. In reaching her decision, the ALJ squarely addressed the issues raised by petitioners in view of the governing law.

Among other legal precedent, the ALJ aptly recognized her familiar and deferential standard of review applicable to "local boards of education," which enjoy "broad discretionary authority" and whose actions are "entitled to a presumption of correctness absent a showing of bad faith, illegal motive or a lack of rational basis." L.S. ex rel. minor child E.S. v. Bd. of Educ. of Westfield, EDU 7387-09, final decision (Dec. 20, 2009), https://njlaw.rutgers.edu/collections/oal/final/edu07387-09.pdf. The ALJ observed the PBOE was "not required by statute, regulation, or board policy to consider certain information or make particular findings before voting on the matter." Instead, the PBOE's "members must decide for themselves what information is needed to make an informed decision."

The ALJ elaborated:

> In the instant case, before voting on whether to renew the agreement, the [PBOE] consulted its attorney and a demographer, presented information to the community, and listened to public comments. During this deliberative period, petitioners raised concerns to the [PBOE] about its decision-making process. First, even if it did not renew the [SRA], by operation of settled law, the relationship would nonetheless continue on the same terms. The only sensible reason not to renew the agreement, then, is if the [PBOE] wanted to sever the relationship. The [PBOE] had a rational basis to avoid initiating the severance process, which its attorney advised is both uncertain and expensive – two propositions petitioners do not dispute.

A-2003-19

Assuming the [PBOE] wanted severance, they would have to conduct a costly feasibility study and petition the Commissioner . . . for permission to sever. Moreover, it was known to the [PBOE] that any such application would have been contested by Cranbury. The feasibility study alone . . . which Princeton would have to fully finance . . . could cost tens of thousands of dollars. And the unavoidable litigation costs and expert fees could easily exceed that amount. Measured against the prospect of success, the [PBOE]'s decision to avoid these costs was not arbitrary, capricious or unreasonable. The [PBOE] also had sound financial incentives to continue the relationship. Tuition paid by Cranbury – $17,191 per-student, totaling about $5 million annually, which represents the second largest source of revenue for the operating budget.

The ALJ thoroughly considered petitioners' contentions, including that the Board failed to provide "'verifiable facts or evidence' to substantiate the cost of educating Cranbury students and the cost savings if those students no longer attended [PHS]." Rejecting those assertions, the ALJ found the PBOE "estimated, based on demographic reports, that even without Cranbury students, [PHS] would remain over-capacity in all but one of the next eight school years." The ALJ also dismissed petitioners' assertion that the PBOE's demographic reports were inaccurate. Instead, the ALJ determined petitioners failed to present any evidence – including a competing expert report – to support that claim.

A-2003-19

Nor did the ALJ find persuasive petitioners' argument "that the [PBOE] should have deliberated longer before voting" and its "interactions with the community were merely 'public relations events.'" Instead, the ALJ determined it was "undisputed that the [PBOE had] a significant amount of data before [it], had the law presented by [its] attorney, and listed [the proposed renewal] to the public at an open public meeting." As such, the ALJ concluded "the undisputed evidence demonstrate[d] that the [PBOE]'s decision was not arbitrary, unreasonable or capricious."

And the ALJ found no legal basis to grant petitioners' request for the Commissioner to compel the PBOE to prepare a feasibility study "to initiate the severance process." Noting the Commissioner has no statutory authority to terminate an SRA, the ALJ instead recognized the decision to sever the SRA rests with the local boards of education. Accordingly, the ALJ determined "petitioners [had] no right to demand a feasibility study or the dissolution of the [SRA] as a matter of law, as there is no private right to such a claim."

Finally, the ALJ rejected petitioners' contentions that Spann impermissibly voted on renewal of the SRA. Alternatively, the ALJ found any error was harmless here, where the majority voted to approve the SRA.

A-2003-19

After the petitioners filed exceptions, the PBOE filed a reply and the CBOE joined the PBOE in urging the Commissioner to uphold the ALJ's initial decision. On December 17, 2019, the Commissioner issued a well-reasoned final decision, largely adopting the ALJ's decision.

Rejecting the litany of petitioners' exceptions as unpersuasive, the Commissioner agreed with the ALJ that a plenary hearing was unnecessary here, where there were no facts in dispute. Instead, the Commissioner astutely recognized "petitioners seem[ed] to challenge the accuracy of the information presented to the [PBOE]" but failed to dispute "what [the PBOE] reviewed and considered in rendering its determination." In that context, the Commissioner found the PBOE "made an informed determination based on information provided by [its] attorney and following public discussion and comment."

The Commissioner recognized petitioners contended "the ALJ mischaracterized their argument as asserting that [the PBOE's] actions were arbitrary and capricious" when they claimed the PBOE "breached [its] fiduciary obligations to [Princeton's] citizens." But, similar to the ALJ, the Commissioner cited agency precedent – long-recognized by this court – that local board actions are discretionary and "may not be upset unless patently arbitrary, without rational basis or induced by improper motives." Kopera v. W. Orange Bd. of

Educ., 60 N.J. Super. 288, 294 (App. Div. 1960).  Finding the PBOE "did not act in an arbitrary, capricious, or unreasonable manner in voting to extend the [SRA]," the Commissioner found petitioners' exceptions were unpersuasive.

Addressing petitioners' remaining concerns, the Commissioner found "no basis" to compel the PBOE "to conduct a feasibility study when both the [PBOE] and [CBOE] wish to continue the [SRA]."  Turning to Spann's vote, the Commissioner declined to determine whether N.J.S.A. 18A:38-8.1 permitted the CBOE representative to cast a vote on the SRA.  Instead, the Commissioner adopted that portion of the ALJ's decision that determined any error here was harmless.  Accordingly, the Commissioner adopted the ALJ's decision as modified.  This appeal followed.

On appeal, petitioners raise several overlapping points, asserting:  the Commissioner resolved disputed material facts; the PBOE breached its fiduciary duties in renewing the SRA; the board members were misinformed about legal precedent; and Spann voted improperly.  We have considered these contentions in light of the record and the applicable legal principles, and conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E). Pursuant to our limited standard of review, In re Stallworth, 208 N.J. 182, 194 (2011), we affirm – as did the Commissioner – substantially for the

9

reasons expressed in the ALJ's cogent written decision, which is not arbitrary, capricious, or unreasonable, <u>In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp.</u>, 216 N.J. 370, 385 (2013).  We add only the following comments.

Our review of an agency decision is well settled.  Ordinarily, we defer to the Commissioner's determination unless it was "arbitrary, capricious, or unreasonable."  <u>Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist.</u>, 241 N.J. 31, 40 (2020).  In making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [<u>Stallworth</u>, 208 N.J. at 194 (quoting <u>In re Carter</u>, 191 N.J. 474, 482-83 (2007)).]

We note, however, a court is "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue."  <u>Carter</u>, 191 N.J. at 483 (internal quotation marks omitted).  "Because an agency's determination on summary decision is a legal determination, [appellate] review

[of that decision] is de novo." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015).

The standard for summary decision motions pursuant to N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." Id. at 203. As such, an agency must ascertain "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 204 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

However, our review of an agency's summary decision differs slightly from our de novo review of a court's decision on summary judgment. St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005). Although we employ a de novo standard of review to an agency's determination that there are no genuine issues of material fact, we aim to "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." Ibid.

In the present matter, petitioners argue the PBOE relied on incorrect or insufficient data in reaching its decision, which gave rise to disputed issues of fact. Petitioners further contend the Commissioner impermissibly resolved

11

disputed material facts, including whether the: (1) CBOE would have contested the PBOE's decision to sever the SRA; (2) cost of litigation would have been excessive; (3) PBOE had sound financial incentives to continue the SRA; and (4) demographic reports were accurate. Notwithstanding the mandates of N.J.A.C. 1:1-10.4(b), petitioners inexplicably assert "the parties have not yet engaged in discovery."

Notably, however, petitioners failed to specifically deny or dispute the PBOE's statement of material facts submitted to the ALJ. Nor did petitioners identify any information that their belated request for discovery might likely uncover. See Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995) (recognizing the non-moving party in a contested case must diligently seek discovery and "identify any document or group of documents" that the moving party "failed to produce that might have created a dispute of fact"). Instead, petitioners' contentions are nothing more than supposition and bald assertions. See also Triffin v. Am. Int'l Grp., Inc., 372 N.J. Super. 517, 523-24 (App. Div. 2004) (recognizing the non-moving party opposing a summary judgment motion must "do more than simply show that there is something more than a metaphysical doubt as to the material facts" (quoting Big

12                                                                                    A-2003-19

Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3rd Cir. 1992))).

Nor are we persuaded that an evidentiary hearing was necessary to examine the PBOE's knowledge of precedent that supported a board of education's termination of prior SRAs. Petitioners' reliance on the six agency decisions cited in their merits brief is misplaced. Those decisions uphold a sending district's decision to unilaterally terminate the SRA. Accordingly, they are inapplicable to petitioners' complaint, which sought to direct the PBOE, on behalf of the receiving district, to terminate the SRA.

We also reject petitioners' conflated contentions that the PBOE breached its fiduciary responsibilities and the PBOE's decision was arbitrary and capricious. Notably, petitioners only argued before the ALJ that the PBOE breached its fiduciary duties. To support their argument on appeal, petitioners rely on our Supreme Court's decision in Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952). We are unpersuaded.

In Driscoll, investors in two bridges that connected Pennsylvania and Burlington County conspired with Burlington County officials to sell the bridges to a county bridge commission – which they had lobbied to create – for a substantial profit. Id. at 447-53. To finance the purchase, the bridge

commissioners adopted a resolution approving the sale of revenue bonds without engaging in any internal discussion. Id. at 463. The Court held "the acquisition of the bridges by the bridge commission was fraught with fraud and corruption." Id. at 474. In reaching its decision, the Court determined the "absence of independent consideration and investigation of a very complicated transaction involving voluminous technical documents, and the unprecedented speed and secrecy with which the purchase was effected [we]re ample evidence of a palpable abuse of discretion and breach of public trust." Id. at 477.

By contrast, in the present matter, petitioners do not assert that the PBOE engaged in fraud or corruption in voting to renew the SRA. Instead, petitioners essentially argue the PBOE was misinformed and lacked sufficient information to render its decision. Accordingly, the Court's decision in Driscoll is inapplicable to the circumstances here.

Finally, we discern no basis to disturb the Commissioner's decision that any error in permitting Spann to vote was harmless here, where the majority of PBOE members voted to renew the SRA. Notably, petitioners do not assert Spann's participation in the vote unduly influenced the PBOE members. We further reject petitioners' contentions that Spann violated the School Ethics Act, N.J.S.A. 18A:12-21 to -34, by voting on the SRA. Simply put, the

14

Commissioner lacks jurisdiction to consider ethics claims. <u>See</u> N.J.S.A. 18A:12-29(a) (providing violations of the Act must be made to the school ethics commission).[1]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] In view of our disposition, we decline to address the PBOE's request for sanctions under <u>Rule</u> 2:9-9.

A-2003-19